544 A.2d 450

**BELL FUEL CORPORATION**

v.

**Anthony CATTOLICO, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 4, 1988.

Filed June 10, 1988.

Reargument Denied Aug. 5, 1988.

Barry M. Klayman, Philadelphia, for appellant.

Joseph A. Venuti, Jr., Philadelphia, for appellee.

Before BECK, KELLY and JOHNSON, JJ.

BECK, Judge:

This is an appeal from an order of the trial court denying appellant Bell Fuel Corporation's request for a preliminary injunction against its former employee, appellee Anthony Cattolico, Jr.[1] Bell sought a preliminary injunction to restrain Cattolico from soliciting Bell's customers, using or disclosing Bell's confidential business information and retaining Bell's confidential business records in alleged violation of the law of unfair competition and the terms of Cattolico's employment agreement with Bell. In pertinent part, the employment agreement provides as follows:

Employee covenants and agrees that Employee will not, during the term of his employment or thereafter, for any reason or purpose whatsoever, use for Employee's personal benefit, or disclose, communicate or divulge to, or use for the benefit, direct or indirect, of any person, firm, association or company other than the Company, any information as to business methods, business policies, procedures, techniques, research or development projects or results thereof, trade secrets, knowledge and processes used or developed by the Company, any addresses of customers of the Company, data on or relating to past, present or prospective customers of the Company or any other confidential information relating to or dealing with the business operations or activities of the Company,

1. This is an appeal as of right from an interlocutory order pursuant to Pa.R.A.P. 311(a)(4).

made Employee or learned or acquired by Employee while in the employ of the Company. Employee acknowledges that such confidential information is the sole and exclusive property of the Company and maintenance of the confidentiality thereof is essential to the Company's ability to conduct its business.

. . . .

Employee covenants and agrees that Employee will not, during the term of Employee's employment or thereafter, contact or solicit customers of the Company except on behalf of the Company or solicit employees to leave the· Company.

. . . .

[Upon termination of employment, employee will] [d]eliver to the Company any and all records, contracts, lists of names or other customer data and any other papers which have come into Employee's possession by reason of Employee's employment with Company or which Employee holds for the Company, irrespective of whether or not any of said items were prepared by Employee, and Employee shall not retain memoranda or copies of any of said items.[2]

The procedural history of this matter can be briefly stated as follows. On July 17, 1987, Bell contemporaneously filed a Complaint in Equity and a Petition for Special and Preliminary Injunction alleging breach of the restrictive covenant and seeking enforcement thereof as well as damages. The Petition was supported by an affidavit of William A. Selvagn, Sales Manager of Bell and Cattolico's supervisor. On that date, Judge Diaz issued a Rule to

---

**2.** Although Cattolico admitted only to having signed an agreement not to divulge confidential information and stated that he "did not recall" having signed the agreement reproduced above, the trial court found as a fact that Cattolico had signed an agreement "not to divulge and/or compete." Since this is the title of the agreement reproduced above, we assume that the trial court meant to find that Cattolico signed that agreement and we premise our analysis of this case, as the trial court appears to have done, on that assumption.

Show Cause why the preliminary injunction should not issue, returnable on July 21, 1987. Actually, the so-called hearing on the preliminary injunction was not conducted until July 28, 1987, before a different judge.

At the hearing, counsel for appellee handed to the court and opposing counsel appellee's Response to the Petition for Special and Preliminary Injunction, accompanied by an affidavit of appellee. The trial court then elicited from counsel opening remarks and soon reached the conclusion that the court might be able to resolve the preliminary injunction matter on either "summary judgment or demurrer" since counsel for appellee raised several arguments in support of entry of judgment for appellee as a matter of law. Therefore, the trial court decided that although it would allow the testimony to begin and to continue until shortly before the end of that hearing day, the court would then hear argument on the issues that might entitle Cattolico to denial of the injunction as a matter of law. The court did not make clear exactly what procedural posture it would then consider the matter to be in. The court merely stated that it considered the arguments loosely to be either in support of a demurrer or a motion for summary judgment. The court committed itself to rendering decision on those issues by the following day. The court specifically stated that in so deciding, it would limit its consideration to only the Petition and Response and supporting affidavits and memoranda of law. It would not consider any testimony elicited at the hearing.

The court then allowed Bell to call its first witness, Cattolico, who was called as on cross. After the examination of Cattolico was complete, the court heard oral argument on what it then called appellee's "motion for summary judgment" and terminated the hearing pending decision on the motion. The next day, the court rendered its written decision granting what it called "summary judgment" to appellee and denying appellant's Petition for Preliminary Injunction. The court found as a fact that:

1. Cattolico was employed by Bell on September 17, 1981 and, ancillary to that employment, entered into a covenant not to compete and/or divulge which *"inter alia* prohibited him from contacting or soliciting customers"* of Bell except on behalf of Bell either during or after his employment, and which contained no territorial or time limitations.

2. Cattolico voluntarily terminated his employment with Bell on June 16, 1987, went to work for a competitor of Bell and contacted customers of Bell to solicit their business for his new employer.

The court made the following conclusions of law:

1. The covenant not to compete, which fails to specify time or territorial limits, is void as unreasonable in that it imposes an unconscionable restraint on appellee's ability to pursue his occupation.

2. The covenant may not be modified because it is unreasonable on its face.

3. Appellee did not divulge any trade secrets of Bell's.

4. Appellant is not entitled to an injunction because it has failed to demonstrate a right to relief which is clear and free from doubt.

A trial court has broad discretion in granting or denying a preliminary injunction. We will reverse such a decision only if the trial court abused its discretion or committed a palpable legal error. *Merrill Lynch, Pierce, Fenner & Smith v. Moose,* 365 Pa.Super. 40, 47, 528 A.2d 1351, 1355 (1987) (citing, *inter alia, Unionville—Chadds Ford School District v. Rotteveel,* 87 Pa.Commw. 334, 336–7, 487 A.2d 109, 111 (1985)). We must uphold the trial court's decision if it can be sustained on "any apparently reasonable ground." *Id.; John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114 (1982); *Boyd v. Cooper,* 269 Pa.Super. 594, 410 A.2d 860 (1979).

The trial court must not grant a preliminary injunction unless the petitioning party has satisfied the following rigorous standard:

[F]irst, that is is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct.... Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded....

*City of Philadelphia v. District Council 33*, 112 Pa. Commw. 90, 535 A.2d 231, 236 (1987) (quoting *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978)); *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770 (1965).

Appellant first argues that the proper determination of this appeal depends in part on a clear understanding of the procedural posture of the case. We agree that the procedural aspect of this case is significant. Appellant contends that in fact, the trial court granted appellee a demurrer, not summary judgment, to appellant's Petition for Preliminary Injunction, and that our review must, therefore, be governed by the standards applicable to review of a demurrer. Accepting this argument, we would take every well-pleaded fact in appellant's petition as true, accept all reasonable inferences therefrom, but draw our own conclusions of law. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976). Appellee counters that we should focus our attention instead on Equity Rule 1531, which states:

In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider

affidavits of parties or third persons or any other proof which the court may require.

Pa.R.Civ.P. 1531(a).

■ Appellee argues that we should construe the trial court's action in deciding this matter based solely on the pleadings and two affidavits as merely an exercise of the trial court's ability under this rule to decide a preliminary injunction matter using whatever proof the court has or needs. Thus, appellee appears to assert that a trial court has the discretion to schedule a hearing but then terminate it when the defendant's opening remarks suggest that there may be a legal bar to entry of the injunction, to refuse to hear the evidence, and then to render a final decision denying the preliminary injunction based on the court's perception of the facts based only on the pleadings and two affidavits. On appeal, appellee asks us to assume the facts to be not only as the trial court found them, but also as asserted in its Response and supporting affidavit, despite the fact that many of the factual allegations in appellee's documents are disputed by Bell.[3]

3. Appellee also asserts that appellant has waived its right to object to the procedure used by the trial court because it did not object to the court's rendering a preliminary decision as to whether the injunction should be denied as a matter of law when the court announced it would do so at the hearing. This is clearly without merit. At the hearing, the trial court never clarified exactly what it was doing. It did not clearly state whether it was deciding a demurrer, and would accept the facts as appellant represented them, or deciding a summary judgment motion, and would only hold for appellee if it found no material facts in dispute.

How we can expect appellant to object in precisely the correct fashion to a procedure even we cannot categorize? What appellant did at the hearing was to present its argument that appellee should not prevail because there was no absolute legal impediment to the grant of a preliminary injunction appearing on the basis of the documents then before the trial court. In so arguing, appellant clearly assumed that the trial court would not deny the preliminary injunction by accepting as true representations of material fact in appellee's affidavit which appellant disputed. Appellant assumed, correctly, that the trial court would either take as true the facts as pleaded in the Petition and determine whether any of the asserted grounds for relief were barred as a matter of law or, as to any issue the resolution of which depended on disputed facts, that the court would refuse appellee a decision as a matter of law and would proceed to receive the neces-

Although the analysis of both parties is wrong, we find the appellee to have strayed further from the true path than has appellant.

■ We are unable precisely to categorize the trial court's action here as either the grant of a demurrer or summary judgment. Given the preliminary nature of the proceeding we are reviewing, we doubt whether either term is, in fact, appropriate. In any event, the trial court cannot be construed to have granted a demurrer to appellee since the court considered factual affidavits and a responsive pleading, whereas a demurrer responds only to the initial pleading and to the respondent's averment that the facts in the initial pleading are true but do not state a cause of action. However, it is equally clear that the trial court did not follow the procedure for granting summary judgment because the record reveals that appellee never actually submitted such a motion and, thus, appellant had no opportunity to respond thereto. Pa.R.C.P. 1035. Moreover, in this case there is no doubt that given the conflicting averments in the Petition, Response and affidavits, there were material facts in dispute. For example, Cattolico denied ever having signed the employment agreement on which Bell based its claim. Thus, summary judgment could not possibly be granted.

What the trial court actually appears to have done is to have assumed and found certain of the relevant facts to be as Bell alleged. For example, it found that Cattolico had signed the agreement and that its terms were as Bell asserted. It then determined that based on those facts alone, Bell was not entitled to a preliminary injunction based on the restrictive covenant in the agreement because it was unreasonable and unenforceable as a matter of law. As to this issue, we agree with the trial court that no evidentiary hearing was required for it to be able to decide whether, as a matter of law and as if on demurrer, accept-

sary evidence. We will not charge appellant with having waived an objection to the trial court following a procedure which was never fully described and which was both unanticipated and incorrect.

ing all the facts pertinent to this issue to be as Bell averred, the covenant was void on its face. We differ with the trial court, however, as to its legal conclusion that on those facts, the covenant was void and unmodifiable.

As to the other the pertinent issues, namely whether Bell was entitled to a preliminary injunction to protect its confidential business information even outside of the restrictive covenant and to a return of its confidential business records, the court made *no* findings of material fact, but did draw the factual conclusion that Cattolico had not divulged any of Bell's trade secrets and that no injunction on that ground would issue.

■ The procedure used by the trial court makes appellate review difficult. It cannot be categorized under our rules of procedure. In any event, we conclude that under the circumstances of this case, it was necessary for the court to hold a full evidentiary hearing on the preliminary injunction petition as contemplated by the prior order of Judge Diaz in this matter. The result of the trial court's action was a premature adjudication of one of the crucial issues in this matter, i.e., whether Bell had a right to a preliminary injunction enjoining Cattolico from using or divulging any of Bell's confidential business information even in the absence of an enforceable restrictive covenant. The trial court's failure to conduct a hearing to obtain the factual information necessary to reach a decision on this issue resulted in its determining that no such protection would be afforded Bell *before* Bell had an opportunity to attempt to demonstrate the precise nature of the information that Cattolico had, the circumstances under which he obtained it, the significance of that information in Bell's industry and the harm Bell would suffer if the information was used or divulged. As will become clear in our further discussion below, all of this information is of central importance to a determination of whether a preliminary injunction was warranted.

We agree with appellee that there is no absolute right to a hearing on a preliminary injunction. *Franklin Decora-*

*tors, Inc. v. Hende–Jon Furniture Showrooms, Inc.,* 339 Pa.Super. 449, 489 A.2d 246 (1985). However, it is equally true that the decision whether to hold a hearing is committed to the discretion of the trial court and will be reversed where that discretion is abused. *Id.,* 339 Pa.Superior Ct. at 451, 489 A.2d at 247. Moreover, our rules and our case law clearly indicate that a hearing is customarily held and is the preferred procedure. It is the rare preliminary injunction that can correctly be denied without a hearing and no preliminary injunction can be granted and continued without a hearing, whether before or after the initial grant. Pa.R.C.P. 1531; Goodrich–Amram 2d, *Standard Pennsylvania Practice,* Vol. 5, at 267; *Soja v. Factoryville Sportsmen's Club,* 361 Pa.Super. 473, 522 A.2d 1129 (1987).

There are numerous cases where the trial court has utilized a procedure substantially like that employed here, cutting short a previously scheduled hearing on a preliminary injunction and refusing the injunction as a matter of law, where our appellate courts have found the decision to be premature and have reversed and remanded for a full evidentiary hearing. *See, e.g., Allegheny County v. Milk Control Commission,* 417 Pa. 22, 207 A.2d 838 (1968) (determination that injunction should be refused because plaintiff had adequate remedy at law should have been made only after evidentiary hearing; denial of preliminary injunction reversed and remanded for hearing); *Boyd v. Cooper,* 269 Pa.Super. 594, 410 A.2d 860 (1979). *See also Pubusky v. D.M.F., Inc.,* 428 Pa. 461, 239 A.2d 335 (1968) (court reverses premature grant of preliminary injunction before completion of scheduled hearing).

Since our review of the record before us has convinced us that the premature termination of the hearing by the court below led it to commit legal error in the determination of one crucial issue, i.e., Bell's right to protection of its confidential business information outside of the covenant, we are required to reverse and remand for an evidentiary hearing. As to the other issue determined by the court, regarding the enforceability and modifiability of the covenant itself,

since we find that the court erred in finding the covenant void on its face and unmodifiable, we must also reverse and remand for consideration of whether an appropriately limited injunction to enforce the covenant is otherwise warranted.

## I. *Enforcement and Modification of Restrictive Covenant.*

Bell's first ground for requesting a preliminary injunction is the present and threatened future violation by Cattolico of the restrictive covenant in his employment agreement. This covenant is found in paragraph two of the agreement and provides:

> Employee covenants and agrees that Employee will not, during the term of Employee's employment or thereafter, contact or solicit customers of the Company except on behalf of the Company or solicit employees to leave the Company.

The standard for enforcement of a restrictive covenant has often been stated as follows:

> The law in this Commonwealth for more than a century has been that in order to be enforceable a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory. *Maintenance Specialties v. Gottus,* 455 Pa. 327, 331, 314 A.2d 279, 281 (1974) (Jones, C.J., concurring); *Jacobson & Co. v. International Environmental Corp.,* 427 Pa. 439, 235 A.2d 612 (1967); *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967); *Barb–Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). *See also* Restatement of Contracts § 515(e) (1932).

*Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 506–7, 351 A.2d 207, 210 (1976).

█ In this appeal, we are concerned only with the third requirement, i.e., reasonableness.[4] Although all restrictive covenants are subject to the reasonableness standard, a restrictive covenant that fails to meet this prima facie standard of enforceability is not necessarily void. Our Supreme Court has stated,

> ... where the covenant imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer.

*Sidco Paper Co. v. Aaron,* 465 Pa. 586, 595, 351 A.2d 250, 254 (1976) (citing, *inter alia, Jacobsen & Co. v. International Equipment Corp., supra; Barb–Lee Mobile Frame Co. v. Hoot, supra* ("The man who wildly claims that he owns all the cherry trees in the country cannot be denied protection of the orchard in his backyard.")). Case law empowers Pennsylvania courts to grant artial enforcement of an overbroad covenant either by excising offensive portions of the covenant or by adding language. *Id.,* 465 Pa. at 596, 351 A.2d at 255. In other words, a court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant as so modified. This unique power to modify the parties' contract in the restric-

---

4. In analyzing the enforceability of the covenant, i.e. its reasonableness, we note that we are focussing on the first prong of the standard for a preliminary injunction which requires the petitioner, here Bell, to demonstrate that its right to relief in the underlying action is clear. *See City of Philadelphia v. District Council 33,* and other authorities cited, *supra.* Since the trial court in the instant matter focussed only on this aspect of the preliminary injunction request, and denied relief on that ground alone, we need not consider on this appeal whether Bell also satisfied the remaining requirements of irreparable injury, lack of adequate remedy at law, and greater injury resulting from denial of injunction than from grant thereof. Since we find error in the trial court's finding, at a stage equivalent to demurrer, that Bell's right to relief was not sufficiently clear, on remand the trial court will need to consider these remaining elements, to the extent that appellee has properly challenged them in its Response to the Petition for Preliminary Injunction.

tive covenant context arises from the general equity powers of the court. *Barb–Lee Mobile Frame Co. v. Hoot*, 416 Pa. at 224–25, 206 A.2d at 54. In order to do equity between the parties by balancing the interest of the employee in his occupation and of the employer in his established business, the court must have the flexibility to award the employer reasonable protection, although not all the protection for which he may have contracted.

■ The sole exception to the foregoing rule of modification and enforcement is found in *Reading Aviation Service v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973), the case relied upon by the trial court in refusing to enforce the covenant in the instant matter. In *Reading,* the covenant provided that both during employment and at all times thereafter, the employee could not be active in or assist any business competitive with the employer's. The court held this covenant void on its face and refused even limited enforcement thereof, stating that such an overbroad covenant imposed an unconscionable burden on the employee by excluding him from pursuing his chosen occupation and was far more restrictive than necessary to protect the employer. *Id.*, 454 Pa. at 493, 311 A.2d at 630. As later interpreted by the Supreme Court in *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976), *Reading* prohibits the enforcement of any covenant that is so broad as to evidence an intent by the employer either to oppress the employee or foster a monopoly, both of which are illegitimate purposes. *Id.*, 465 Pa. at 599, 351 A.2d at 257.

In applying these principles to the case before us, of central significance is the question of what actually constitutes the covenant in this case. Cattolico argues that all of the agreement reproduced above is a restrictive covenant subject to the standard of reasonableness and that the covenant, as so defined, is so unreasonable as to be unenforceable under *Reading Aviation.* Cattolico argues that the covenant is unreasonable because it contains no territorial or temporal limitations on its face and, thus, imposes an unconscionable restraint on Cattolico's ability to pursue his

occupation while far exceeding Bell's need for protection. As appellee describes the covenant in its appellate brief:

[the covenant prohibits Cattolico] not only during the course of his employment but "thereafter" into eternity "for any reason or purpose whatsoever" from using any information obtained by him while working for Bell to the benefit of anyone anywhere ... and specifically enjoins the divulging of "any names and addresses of past, present or prospective customers of [Bell] ..." In paragraph [2] of the employment contract, Cattolico is forbidden again during the term of his employment with Bell and "thereafter" from contacting or soliciting customers of Bell ... [it] bars Cattolico from contacting not only present customers of Bell but also any past, future or prospective customer which includes every potential resident or commercial establishment in need of fuel in an amorphous and undefined area....

Brief for Appellee at 17–18.

The foregoing quoted language reveals that appellee's argument is based not only on a misapprehension as to what portion of the agreement actually *is* a restrictive covenant subject to the reasonableness standard, but also on a misapprehension of the law of restrictive covenants.

In actuality, only paragraph 2 of the agreement can be construed as a restrictive covenant to be tested for reasonableness. Only paragraph 2 prohibits Cattolico from directly competing with Bell by soliciting or contacting Bell's customers. The remaining portions of the agreement are *not* non-compete agreements. The remaining portions are a confidentiality or non-disclosure agreement and a return of records agreement. Both protect the property rights of Bell in its business information.

Thus, the restrictive covenant that Bell sought to enforce in this case merely prohibited Cattolico from soliciting or contacting Bell's "customers". The sweeping restriction on the use of Bell's confidential information appearing in paragraph one of the agreement, which restricts the use of information regarding "past, present and prospective"

customers, is not subject to the reasonableness standard. As we will much more fully discuss hereafter, an employer is entitled to protection of its confidential information to the extent that the information is of such a character as to be protectible under the common law of unfair competition or agency. *Spring Steels, Inc. v. Molloy,* 400 Pa. 354, 162 A.2d 370 (1960); *Morgan's Home Equipment Corp. v. Martucci, supra.* This protection is afforded with or without a covenant addressing the subject. If the parties do execute an agreement that expressly provides such protection, it is not limited by the reasonableness criteria applicable to a restrictive covenant.

Having defined the actual covenant as being simply this restraint on solicitation of customers and employees, we may now proceed to review the reasonableness, i.e., enforceability of that covenant.[5]

■ It is clear that the covenant contains no express temporal or geographic limitations. However, we find that

---

**5.** Bell appears to concede that paragraph 2 of the agreement, regarding customer solicitation, is a restrictive covenant subject to the test of reasonableness. We, therefore, are not confronted with the task of deciding that issue. Were we asked to do so, however, we note that the status of such a limited restriction, which goes only to the limited activity of direct solicitation of customers, and which does not generally inhibit an employee from engaging in his former employer's business anywhere or at any time, is not free from doubt. We find at least the suggestion in *Morgan's Home Equipment, supra,* that such a covenant is merely an adjunct means of protecting the employer's confidential customer information and, therefore, is not a general non-compete which must fail if not reasonable or subject to modification and limited enforcement. We find this suggestion in the fact that the *Morgan* Court enforced employment agreements which prohibited three activities—disclosure of confidential information, solicitation of customers, and general competition with the former employer. In doing so, the Court applied the reasonableness criteria only to the general restraint on competition, and enforced the confidential information and customer solicitation restrictions under the common law of unfair competition with *no* reliance on the existence of a reasonable covenant restricting those activities. The Court viewed the prohibition on customer solicitation as merely another way of protecting the employer's valuable and confidential customer information. *Id.,* 390 Pa. at 626, 136 A.2d at 843. Thus, the Court's only inquiry was whether the customer information itself was of the type that merited common law protection, with or without a covenant providing such protection.

the only proper and reasonable construction of the covenant reveals an implied geographic limitation. Since the covenant only prohibits Cattolico from soliciting customers (its prohibition of employee solicitation not being at issue here), and does not generally restrain Cattolico from engaging in any other activity or in any business that is competitive with Bell, the actual geographic scope of the covenant is easily determined to be the territory in which Bell's actual customers are located. Although we cannot define this territory based on the record before us, which contains no list of customers, the trial court certainly can make this determination simply by receiving the appropriate evidence on remand. If this geographical limitation is not overly broad, then the court can simply enforce it. If it is too broad, the court can modify the agreement to provide a more reasonable geographical limitation.

The fact that the trial court was able to construe this covenant as being inherently geographically limited in scope argues forcefully against a finding that the covenant is void as unreasonable on its face. In a highly analogous situation, the Supreme Court reached a similar conclusion. In *Plunkett Chemical Co. v. Reeve*, 373 Pa. 513, 95 A.2d 925 (1953), the Court addressed the enforceability of a *general* restriction on a former employee's competitive activities which had no express geographical limit. The Court determined that the covenant was nevertheless reasonable when given a "reasonable construction." Taking into account all of the circumstances of the case, as we must in the matter *sub judice*, the *Plunkett* Court found that because the employee in question had a defined sales territory during his employment, the parties could be held to have actually intended to restrain his post-employment activities only in the same territory. *Id.*, 373 Pa. at 515–17, 95 A.2d at 926–27. *See also John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977).

Applying this principle of construction to the instant case, it is even easier to find the covenant to be reasonably limited in geographic scope than it was in *Plunkett*, since

the covenant here is not a general restraint at all and applies by its very terms only to solicitation of Bell's actual customers. Thus, unlike the *Plunkett* Court, we need not refer to the factual situation at the time of the execution of the covenant to *supply* a geographic limitation based on our perception of the parties' intent. We need only read the covenant itself to ascertain the clear intent of the parties to restrict only one of Cattolico's activities, which by its very nature could only take place in the geographic area where Bell's customers are located.

Given this inherent geographic limitation, coupled with the fact that the covenant restricts only one activity, we view the trial court's finding of a sufficient analogy between this case and *Reading Aviation* to be legal error. Although the trial court has not given us the benefit of its legal analysis in the form of an opinion supporting its conclusions of law, we can only conclude that it saw *Reading* as per se preventing the enforcement of the restrictive covenant in this case. In fact, *Reading* merely requires us to refuse to enforce any covenant that is manifestly unreasonable in light of the employer's needs and is excessively burdensome to the employee in pursuing his occupation. Thus, the question is overall reasonableness, to be judged against the employer's needs and the impact on the employee. In the instant case, the impact on the employee is limited to the inability directly to lure away Bell's customers. If Cattolico wishes, he may set up shop next door to Bell in a directly competitive business or he may work for any of Bell's competitors. He simply may not solicit Bell's customers or use or disclose Bell's protectible confidential business information. Thus, the covenant is not prima facie unreasonable within the holding of *Reading Aviation.*

We reverse the trial court's conclusion that the covenant is void on its face and unmodifiable. We remand for the conduct of a hearing to ascertain whether Bell can otherwise fulfill the requirements for the grant of a preliminary injunction and, if it can, for the fashioning of an injunction

appropriately limited in time and geographic scope.[6]

## II. *Protection of Confidential Information.*

In addition to seeking enforcement of the restrictive covenant prohibiting direct solicitation of customers, Bell also sought protection of its confidential business information, largely consisting of customer information, by way of preliminary injunction against the use or disclosure thereof. This is the subject of paragraph one of the agreement reproduced above. It is also loosely the subject of paragraph three, regarding return of actual confidential records allegedly taken by Cattolico upon his resignation from Bell's service.[7]

As to this issue, the trial court drew a single conclusion of law. Although the court found that Cattolico *had* solicited Bell's customers, thus presumably using the allegedly confidential information as to the names and addresses of those customers, as well perhaps as other information regarding them, the court nevertheless concluded that "Cattolico's actions further did not result in the divulging of any particular trade secrets of Bell and thus, were not violative of principles of agency or unfair trade practices law." It cited *Morgan's Home Equipment v. Martucci, supra,* in support.

As we have indicated above, it is as to this issue that the trial court's use of a hybrid and undefined procedure led it to error in rendering a premature adjudication based on

---

6. Bell sought enforcement of the covenant against customer solicitation only for a period of two years. On remand, the court must consider whether this or some other time period is appropriate. Since we have found the covenant not to be void as unreasonable on its face, the trial court's power to so modify the covenant as to time is clear. *Sidco Paper Co. v. Aaron, supra; Robert Clifton Associates, Inc. v. O'Connor,* 338 Pa.Super. 246, 487 A.2d 947 (1985); *Alexander & Alexander, Inc. v. Drayton,* 378 F.Supp. 824 (E.D.Pa.), *aff'd mem.,* 505 F.2d 729 (3d Cir.1974).

7. The trial court did not rule on Bell's request for the return of its confidential records, which Cattolico allegedly had taken and failed to return. On remand, this issue should also be determined.

insufficient facts.[8] As a summary review of the law applicable to protection of confidential information will reveal, in the present posture of this case, there are clearly disputed material facts as to Bell's right to a preliminary injunction to protect its allegedly confidential information. The trial court was, therefore, wrong to determine this issue by concluding, based solely on denials and allegations of fact contained in Cattolico's Response and affidavit, that Cattolico had not and, impliedly, would or could not use or divulge any of Bell's protectible business information.

Pennsylvania law provides an employer the right to the protection of its confidential information under certain defined circumstances. *MacBeth–Evans Glass Co. v. Schnelbach*, 239 Pa. 76, 86 A. 688 (1913). Generally, the information must be a particular secret of the employer, not a general secret of the trade, and must be of peculiar importance to the conduct of the employer's business. Given the existence of such confidential information, the legal right to protection may arise either from an express covenant protecting the secret or may be implied from the confidential relationship between the employer and employee in which the information was conveyed. *Id. See also Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273 (1976).

Customer information in particular may be subject to such protection. The seminal case defining and explaining such protection'is *Morgan's Home Equipment*, cited by the trial court. There, the Supreme Court opined:

In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have

8. Despite our narrow review of a trial court's determinations as to the appropriateness of a preliminary injunction, there is no question but that we have the power to reverse a clearly erroneous conclusion of law, such as that drawn by the trial court on this issue and the issue regarding the enforceability of the restrictive covenant discussed above. *See Van Products Company v. General Welding and Fabricating Company*, 419 Pa. 248, 213 A.2d 769 (1965) (on review of grant of injunction in context of protection of confidential business information, appellate court has power to review chancellor's conclusions, whether they be of fact or law, since they are merely result of chancellor's reasoning from facts and law).

been compiled by such firms represent a material investment of employers' time and money. This information is highly confidential and constitutes a valuable asset. Such data has held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices.

·    ·    ·    ·    ·

We agree that confidential customer data are entitled to protection as a trade secret within the meaning of the *MacBeth–Evans* rule.

*Morgan's Home Equipment,* 390 Pa. at 623, 136 A.2d at 842. *See also Van Products Company v. General Welding & Fabricating Company, supra; Sidco Paper Co. v. Aaron, supra.*

■ Of course, whether customer information is protected depends upon whether the information involved in the particular case fulfills the general standard for protection as outlined in *MacBeth–Evans* and numerous like cases. Where the information is not a particular secret belonging to the employer, developed through its efforts or investment, and of value to the continuation of the employer's business, no protection is afforded. For example, in *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy,* 415 Pa. 276, 203 A.2d 469 (1964), the court refused to afford the employer protection of certain dairy delivery route listings because it found that the lists themselves were not a particular secret, being common knowledge and easily discoverable, and that the underlying customer relationships were actually developed and preserved by the former employees themselves. *Id.,* 415 Pa. at 281–83, 203 A.2d at 472–73. The Court distinguished the customer information at issue in *Morgan's Home Equipment,* which had received protection, because it was highly confidential and because the customer relationships were developed at high cost to the employer and were of great continuing importance to his business. *Id.,* 415 Pa. at 284, 203 A.2d at 473. The *Colteryahn* Court

also noted the existence of confidentiality agreements covering the customer data in *Morgan's Home Equipment* which were absent in *Colteryahn* and noted that the "... presence of a non-disclosure covenant would be indicative of the confidential nature of the data protected ..." *Id.,* 415 Pa. at 283 n. 6, 203 A.2d at 473 n. 6; *Morgan's Home Equipment,* 390 Pa. at 625 n. 5, 136 A.2d at 843 n. 5 (non-disclosure covenant does not create right to protection, but is evidence of confidential nature of data involved); *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114 (1982) (confidentiality agreement is evidence of confidential relationship between parties). *See also Spring Steels, Inc. v. Molloy, supra* (customer lists not protected where easily discoverable or found in trade directories); *Agra Enterprises, Inc. v. Brunozzi,* 302 Pa. Super. 166, 448 A.2d 579 (1982) (customer lists that are publicly available are not particular secrets of the employer entitled to protection).

In the instant case, Bell alleged that in the course of Cattolico's employment, he was privy to large amounts of Bell's customer and other business information, and that this information was confidential and of value to Bell in its particular industry. It also offered the confidentiality agreement as evidence of the secret nature of the information and of the existence of a confidential relationship with Cattolico as to that information. Cattolico responded that he was not privy to confidential information, and that in the fuel supply business such information was readily known by competitors. Apparently accepting Cattolico's version of the facts, the trial court found no trade secrets had been, or presumably could be, used or divulged by Cattolico.

This conclusion was clearly error in light of the close factual analysis that needed to be made prior to determining this issue. The trial court did not have, based solely on the Petition, Response and conflicting affidavits, a sufficient basis to conclude as a matter of law that Cattolico had not and could not divulge or otherwise use protectible customer or other information of Bell's which had been

disclosed to Cattolico in the course of a confidential relationship. It is entirely possible that, given the chance to present its evidence at a full hearing, Bell could have fully substantiated its pleaded assertion that its information met the standard set forth in *MacBeth–Evans* and *Morgan's Home Equipment*, that Cattolico was in possession of that information as a result of a confidential relationship between he and Bell, and that Cattolico had or threatened to cause Bell irreparable harm through the use or disclosure thereof.

The trial court's denial of a preliminary injunction to protect Bell's allegedly confidential business information is reversed. We remand for the conduct of a full hearing on this issue.

Reversed and remanded for further proceedings consistent with this Opinion. Jurisdiction is relinquished.