# Gorodetzer v. 22 Front Street, L.P.

354

*Brett A. Berman, Robert S. Tintner, Gaetan J. Alfano* and *Douglas K. Rosenblum*, for plaintiffs.

*Jeffrey J. Chamko, Kimberly M. Wong, Daniel R. Utain, Aaron E. Moore* and *Arthur W. Lefco*, for defendants.

NEW, *J.*, January 14, 2011—This appeal arises from this court's order dated November 15, 2010 denying plaintiffs Marshall and Maryellen Gorodetzer, Steve and Laurie Rosard, N.Lily Khalif, Raphael Gabay, Frank Bardonaro, Norman S. Jung, Nadica Kracun, Meghan and Aditya Maini, Tom and Elpi Paradiso, SoD Real Estate, L.P., Deann A. Zufall, Christopher and Genny Dunne, Abe Bolden and CCN Properties, LCC (hereinafter "plaintiffs") petition for injunctive relief.

On October 1, 2010, plaintiffs, a group of individual condominium owners at 22 Front Street Condominium, filed a lawsuit against defendants 22 Front Street, L.P., Executive Board of the 22 Front Street Condominium

Association (hereinafter "declarant") and Friends Center City Retirement Community (hereinafter "Friends Group")[1]. Defendant 22 Front Street Condominium Association is declarant of the condominium located at 22 Front Street.[2] Defendant Friends Group is the prospective buyer of certain condominium units at 22 Front Street.

Plaintiffs allege that the public offering statement and the declaration were distributed to all prospective purchasers for the purpose of disclosing certain information about the 22 Front Street Condominium. The public offering statement and the declaration marketed and sold the units as a "premier" high end "new concept in boutique condominium living." The condominium was advertised as a vibrant, upscale community that was unparalleled in the City of Philadelphia. Plaintiffs allege that they purchased their individual condominium units in reliance upon the declaration and the public offering statement on the promise that 22 Front Street Condominium would continue to exist as a "luxury residential facility". In August 2010, plaintiffs learned that the condominium was no longer being marketed as a "premier" high end "new concept in boutique condominium living" but was being marketed as a retirement community, called

1. The Friends Group is a Quaker-based organization that provides non-denominational guidance and assistance to older adults seeking to engage in active urban living.

2. Plaintiffs' allege that while they own seventeen (17) of the twenty-three (23) units sold in the 22 Front Street Condominium, the declarant, through its agents and principals, are thought to own all but one (1) or two (2) of the remaining sold units. Therefore, plaintiffs allege they own the vast majority of units that were sold to individual owners by the declarant (plaintiffs' amended complaint ¶ 22 footnote 1).

"Philadelphia's Newest Retirement Concept."

As a result of plaintiffs' complaints, on August 26, 2010, a meeting was held where declarant and the Friends Group provided information on their plans for the 22 Front Street Condominium to the individual unit owners. The Friends Group informed plaintiffs that it planned on creating a retirement community by purchasing the remaining units and gaining control over the building. Plaintiffs informed defendants that they wanted to live in a "luxury residential facility" and wanted the condominium to remain a "luxury residential facility." The Friends Group announced that it had five deposits for condominium units and it would move forward with its planned retirement community as soon as ten deposits were received.

On August 30, 2010, counsel for plaintiffs sent a "cease and desist" letter to the declarant, the Friends Group and other interested parties setting forth the reasons why the proposed sale by declarant to the Friends Group was unauthorized and must be immediately stopped. Defendants did not respond to the letter and allegedly became more aggressive in its marketing campaign.

On October 4, 2010, plaintiffs filed a petition for injunctive relief with the court seeking to stop the Friends Group from changing the use of the condominium from a "luxury residential facility" to a "retirement community" without the required consent, vote or approval of the individual unit owners. After receiving defendants' responses, the court on November 15, 2010 denied the request for injunction on the papers submitted finding

plaintiffs' failed to plead sufficient facts to demonstrate immediate and irreparable harm.[3] On December 2, 2010, plaintiffs filed the instant appeal.

The purpose of a preliminary injunction is to prevent irreparable injury or gross injustice by preserving the status quo as it exists or as it previously existed before the acts complained of in the complaint.[4] Any preliminary injunction is an extraordinary, interim remedy that should not be issued unless the moving party's right to relief is clear and the wrong to be remedied is manifest.[5]

A petitioner seeking a preliminary injunction must establish every one of the following prerequisites: 1) a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) the party seeking an injunction must show

3. The courts of this commonwealth have held that there is no a - solute right to be given an evidentiary hearing before the grant or denial of a preliminary or special injunction. See, *Bell Fuel Corp. v. Cattolico*, 544 A.2d 450 (Pa. Super. 1988); *Franklin Decorators Inc. v. Hende-Jon Furniture Showrooms Inc.*, 449, 489 A.2d 246 (Pa. Super. 1985).

4. *Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. 2000). See *The York Group, Inc. v. Yorktowne Caskets. Inc.*, 924 A.2d 1234 (Pa. Super. 2007) (stating that the status quo to be maintained by a preliminary injunction is the legal status that preceded the pending controversy).

5. *Anchel*, 762 A.2d at 351

that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) the party must show that the injunction it seeks is reasonably suited to abate the offending activity, and 6) the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.[6] If a petitioner fails to establish any one of the aforementioned prerequisites, a reviewing court need not address he others.[7]

Plaintiffs failed to meet the irreparable harm requirement. A plaintiff seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages. In order to meet this burden, a plaintiff must present "concrete evidence" demonstrating "actual proof of irreparable harm." The plaintiff's claimed "irreparable harm" cannot be based solely on speculation and hypothesis.[8] Moreover, for purposes of a preliminary injunction the claimed harm must be irreversible before it will be deemed irreparable.[9]

In the case subjudice, plaintiffs' alleged harm is defendants' alleged change of use for the condominium from "luxury residential facility" to "retirement

---

6. *Summit Towne Ctr. v. Shoe Show Rocky Mt. Inc.,* 828 A.2d 995, 1001 (Pa. Super. 2003).

7. *Id.,* 828 A.2d at 1001.

8. *Kessler v. Broder,* 851 A.2d 944, 951 (Pa. Super. 2004).

9. See *Sovereign Bank v. Harper,* 674 A.2d at 1085, 1093 (Pa. Super. 1996).

community." The complaint, petition and supporting exhibits failed to present any evidence of immediate and irreparable harm. No evidence was alleged or presented that the use as declared·in the declaration and the public offering statement changed or was going to be changed. Moreover, no evidence was presented demonstrating a sale of the units. The only allegation presented is that defendants intended to move forward with their plan once ten deposits were received. Plaintiffs alleged "...at the August 26, 2010 Meeting, the Friends Group announced that it currently had at least five (5) deposits for the 22 Front Street Condominium and that the Friends Group planned on immediately moving forward with its planned 'retirement community' as soon as ten (10) deposits were received."[10] As such no immediate or irreparable harm existed.[11]

Moreover, plaintiffs have failed to present any evidence of greater injury resulting from denying the injunction than granting the injunction or that their right to relief is clear. A review of the record demonstrates that greater injury would result to the declarant who has been unable to sell the remaining condominium units at 22 Front Street Condominium. Although the court recognizes the unit owner's unique investment in his individual unit, the declarant's investment is much greater. Furthermore, any harm suffered by declarant and the unit owner can be

10. Plaintiffs' complaint ¶ 43.
11. To the extent plaintiffs' alleged harm is in the form of diminution in value of the units, making the units unrentable and adding to the financial instability of the building, the alleged harm can be compensated with money damages.

compensated by money damages.

The court further finds that plaintiffs' right to restrain declarant from changing the use by selling the units to the Friends Group is not clear. The declarant and the Friends Group have denied any use change. The declarant and the Friends Group have also denied that selling the units to the Friends Group constitutes a change in use as defined by the public offering statement and the declaration. As such, plaintiffs' right to relief is not clear.

Based on the foregoing, this court's order dated November 15, 2010 should be affirmed.