J-S59037-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BANK FINANCIAL SERVICES GROUP, STEVEN GOLDBERG, STEVEN GOLDBERG SOLE PROPRIETORSHIP, ARNOLD WINICK, AND DAVID PAYNE, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| MEYER-CHATFIELD CORP., | : : | |
| -------------------------------------------- | : : | |
| MEYER-CHATFIELD CORP. | : : : | |
| v. | : : : | |
| BANK FINANCIAL SERVICES GROUP; STEVEN GOLDBERG AND DAVID PAYNE | : : : | |
| Appellants | : | No. 1092 EDA 2014 |

Appeal from the Order Entered March 17, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 2013-30326 & 2013-29858

BEFORE:    SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 07, 2014**

Bank Financial Services Group (BFS), Steven Goldberg, Arnold Winick, and David Payne (collectively, "Appellants") appeal from two orders entered by the trial court. First, Appellants appeal from the March 17, 2014 "Interim Order for Special Injunction" entered in favor of Meyer-Chatfield and against Appellants. Appellants also appeal from an order entered on March 26, 2014, by which the trial court denied Appellants' "Motion Demanding a

*Retired Senior Judge assigned to the Superior Court.

Hearing under PA.R.Civ.P. 1531(f)(1) and Motion to Dissolve Injunction under Pa.R.Civ.P. 1531(c)." Upon review, we vacate the order entered on March 17, 2014, and remand to the trial court for additional proceedings.

The trial court summarized the facts underlying this case.

> Meyer-Chatfield is in the business of providing bank-owned life insurance ("BOLI"), which is a highly specialized financial product. BOLI is a single premium life insurance contract specifically designed for banks to earn tax free income, among other benefits. Since its beginning in 1992, Meyer-Chatfield has been engaged in the design, marketing, sales and servicing of BOLI products to the banking community nationwide. Meyer-Chatfield has developed highly sophisticated programs to analyze and meet the needs of its existing customers and to identify, cultivate and establish strategic relationships and contractual and business relationships with new customers. Meyer-Chatfield has expended substantial time, money, and effort to recruit, train and supervise a team of professional marketing and sales consultants to carry out its programs.

> On March 3, 2003, Steven Goldberg executed a sales representative agreement with Meyer-Chatfield (the "Goldberg Contract"). Goldberg became an extremely successful BOLI salesperson, earning in excess of $2 million in commissions in multiple years. [The contract included a non-compete agreement.]

> ***

> The Goldberg Contract was entered into for an initial (1) year term from March 7, 2003 to March 7, 2004 (the "Term"), and was automatically renewed every year thereafter "unless either party notified the other party in writing at least three (3) months prior to the end of the Term or any renewal thereof that it elects to terminate [the Goldberg Contract], in which event [the Goldberg Contract] shall expire upon the expiration of the then current renewal term."

Arnold Winick became a BOLI sales representative for Meyer-Chatfield in 2002 and teamed up with Goldberg. Although Winick did not have a contract with Meyer-Chatfield, he, much like Goldberg, was a beneficiary of extensive and ongoing training from Meyer-Chatfield and became an extremely successful BOLI salesperson.

On August 16, 2013, Goldberg left Meyer-Chatfield and went to work for Bank Financial Services Group ("BFS"), which is a direct competitor of Meyer-Chatfield's. Winick followed Goldberg to BFS, along with numerous other employees, including David Payne, Joseph Byrd and David Schwartz.

Trial Court Opinion, 5/30/2014, at 1-3.

On October 2, 2013, Meyer-Chatfield filed a complaint and petition for preliminary injunction against Appellants. On October 7, 2013, BFS, Goldberg, the Steven Goldberg Sole Proprietorship, Winick and Payne filed a complaint for declaratory judgment and a special/preliminary injunction against Meyer-Chatfield. The two matters were later consolidated.

A hearing was held on October 18, 2013. At that hearing, the trial court permitted counsel to argue why "interim injunctive relief would be appropriate in this case." N.T. 10/18/2013, at 3. No testimony was taken, and the trial court took the matter under advisement.

The next hearing was held on January 29, 2014. The parties confirmed that they were trying to work through discovery disputes and had also begun settlement negotiations. Appellants brought their witnesses and were prepared to proceed with the hearing; however, Appellants then argued that Meyer-Chatfield brought a surprise expert witness, forensic

analyst Louis Cinquanto, and asked for a protective order with respect to his testimony. The trial court denied that request, and due to Cinquanto's schedule, permitted him to testify first.

The trial court summarized that testimony as follows.

… Meyer-Chatfield hired Louis Cinquanto to perform a forensic computer investigation. Cinquanto, who testified at the January 29, 2014 hearing in this matter, is a certified computer forensic examiner and Chief Operations Officer and senior forensic examiner at Cornerstone Legal Consultants, a litigation consulting firm that performs computer preservation, analysis, expert testimony, and trial presentation services. Cinquanto conducted an in-depth investigation of the computer records of Goldberg, Winick, Byrd and Schwartz. Meyer-Chatfield alleges that the discovery of this investigation demonstrates that Goldberg, Winick, Byrd and Schwartz unlawfully accessed, downloaded and copied Meyer-Chatfield's confidential and proprietary information and data from its computers shortly before leaving Meyer-Chatfield to join BFS. Furthermore, Cinquanto testified about how the former Meyer-Chatfield employees used methods to conceal their activities on their computers, including finding a program used to erase temporary files on the computer Goldberg used at Meyer-Chatfield.

In addition, Cinquanto testified that analysis of Payne's computer showed that Payne used a "drop box," which is a service that allows the sending and receiving of data or files by way of the internet. In addition, Payne used a flash drive three (3) times in 2013 to transfer files that had "Meyer-Chatfield" or "MC" in the file name. Likewise, an analysis of Byrd's and Schwartz's computers showed that they both used flash drives.

In sum, Cinquanto concluded in his testimony that the former Meyer-Chatfield employees engaged in a systematic pattern of concealment and destruction of data that would have indicated what specific Meyer-Chatfield data [Appellants] accessed and sent to outside persons or companies. He added that the action of the former employees could be the "largest IP

theft" case that he has seen in all of his years as a computer forensic [analyst].

Trial Court Opinion, 5/30/2014, at 3-6.

Cinquanto did not complete his testimony until the late afternoon, so the trial court scheduled another hearing, which occurred on February 28, 2014. At that hearing, the trial court permitted argument with respect to the grant of interim relief pending the resolution of the preliminary injunction. Meyer-Chatfield argued that Appellants continued to "pilfer" clients, and to date, 18 clients, representing a "very sizeable portion of Meyer-Chatfield's business" had been lost. N.T., 2/28/2014, at 4. Counsel further argued that, if Appellants' conduct continued, Meyer-Chatfield would go out of business. Appellants argued in response to Meyer-Chatfield's contentions; no testimony was taken; and, the trial court took the matter under advisement and scheduled a two-day hearing.

On March 13, 2014, the trial court signed an order, which states the following.

AND NOW, this 13th day of March 2014, it is hereby ORDERED and DECREED as follows:

[Appellants] Steven Goldberg and [BFS] and any of their respective partners, agents, joint ventures and any persons or entities acting for or on their behalf including but not limited to BFS Northeast, Arnold Winick, David Payne, David Schwartz and Joseph Byrd (collectively, [Appellants]) are hereby enjoined and shall immediately cease and desist from: (i) diverting existing BOLI business away from Meyer-Chatfield (ii) soliciting or inducing or attempting to induce any existing bank client of

Meyer-Chatfield not to do business with Meyer-Chatfield or to cease doing business with Meyer-Chatfield and (iii) contacting, soliciting or communicating in any way with existing bank clients of Meyer-Chatfield (including those identified in Exhibit 2 of the Affidavit of Bennett S. Meyer in support of the Petition.)

IT IS FURTHER ORDERED AND DECREED that [Appellants] are temporarily enjoined from servicing its BOLI policies in regard to Customers Bank other than the Northwestern Mutual BOLI policy sold to Customers Bank by BFS in September 2013.

IT IS FURTHER ORDERED AND DECREED that [Appellants] may provide monthly reports strictly necessary for the servicing of existing BOLI policies at the following banks …

This Interim Special Injunction Order shall take effect immediately upon the posting of a bond by Meyer-Chatfield in the amount of One Thousand Dollars ($1,000.00) and shall continue in force until further Order of the Court.

Interim Order for Special Injunction, 3/17/2014.

On March 19, 2014, Appellants filed a motion to dissolve the injunction and for a hearing pursuant to Pa.R.C.P. 1531(f)(1).[1] The trial court entered

---

[1] That rule provides that

[w]hen a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three days after demand by the defendant. A final order shall be filed in the office of the prothonotary within twenty-four hours after the close of the hearing. If the final hearing is not held within the three-day period, or if the final order is not filed within twenty-four hours after the close of the hearing, the injunction shall be deemed dissolved.

Pa.R.C.P. 1531(f)(1).

an order denying that motion on March 26, 2014. On March 27, 2014, Appellants filed a notice of appeal referencing both orders.[2,3]

Before we reach the issues raised on appeal by Appellants, we consider the trial court's suggestion that these orders are not appealable because it has not yet heard all of the evidence.[4] The trial court observed the following.

> Hearings in this matter were held on October 18, 2013, January 29, 2014 and February 28, 2014. These preliminary injunction hearings have not been completed. An appeal cannot be taken from a temporary interim injunction order entered during the course of multiple hearings on a petition for preliminary injunction. … Accordingly, this court's order dated March 13, 2014 is interlocutory, and this appeal should be quashed.

Trial Court Opinion, 5/30/2014, at 6.

Although neither party responds specifically to the trial court's observation, the statement of jurisdiction presented by Appellants sets forth that this Court has jurisdiction under Pa.R.A.P. 311(a)(4). Appellants' Brief at 1. That rule provides that a party is entitled to an interlocutory appeal as of right from

---

[2] We observe that the filing of one appeal from multiple orders is discouraged generally. **See TCPF Ltd. P'ship v. Skatell**, 976 A.2d 571, 574 (Pa. Super. 2009).

[3] The trial court did not order a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925 and none was filed.

[4] Hearings on this matter have been scheduled and postponed on numerous occasions. A review of the trial court docket reveals that hearings are scheduled currently for the end of October 2014.

[a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered … after a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4)(ii).

This Court has also explained that

[a]n order which grants a request to enjoin certain conduct, as was done by the trial court in the … order, is an interlocutory matter specifically authorized for appeal as of right by Rule 311(a)(4). Injunctive relief is considered an extraordinary equitable remedy and it is to be granted only where the moving party has established that immediate and irreparable harm, which cannot be compensated by damages, will result if the injunction is denied. Furthermore, the party seeking to enjoin certain conduct must demonstrate that greater injury would result by refusing the injunction than by granting it.

***Pennsylvania Orthopaedic Soc. v. Independence Blue Cross***, 885 A.2d 542, 547 (Pa. Super. 2005) (internal citations omitted).

Instantly, the trial court's "Interim Order for Special Injunction" entered on March 13, 2014 clearly enjoined the conduct of Appellants, and is therefore immediately appealable pursuant to Pa.R.A.P. 311(a)(4). Moreover, the order dated March 26, 2014 which denied Appellants' request to dissolve the injunction is also appealable under the same rule. Accordingly, we conclude that we have jurisdiction to review these orders.

We set forth our well-settled standard of review.

A trial court has broad discretion to grant or deny a preliminary injunction. **Bell Fuel Corp. v. Cattolico**, 375 Pa.Super. 238, 244, 544 A.2d 450, 453 (1988), appeal denied, 520 Pa. 612, 554 A.2d 505 (1989). When reviewing a trial court's grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court below. **Temtex Products, Inc. v. Kramer**, 330 Pa.Super. 183, 197, 479 A.2d 500, 507 (1984) (*quoting* **Singzon v. Commonwealth Dept. of Public Welfare**, 496 Pa. 8, 10–11, 436 A.2d 125, 126–27 (1981)). We may reverse if the trial court's ruling amounted to an abuse of discretion or a misapplication of law. **Bell Fuel**, 375 Pa.Super. at 244, 544 A.2d at 453.

**WPNT Inc. v. Secret Commc'n Inc.**, 661 A.2d 409, 410 (Pa. Super. 1995).

The procedure applicable to actions for injunctive relief is governed by Pa.R.C.P. 1531. That rule provides, in relevant part, as follows.

(a) A court shall issue a preliminary or special injunction[5] only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or

---

[5] "Because of the many similarities between preliminary and special injunctions, the two types tend to merge into one and the words are used interchangeably. Although the former equity rules made minor distinctions between them, the Pennsylvania Rules of Civil Procedure treat them exactly alike." 5 Goodrich Amram 2d § 1531(a):1 (Amram Commentary). For the sake of consistency, we will refer to the injunction granted in this case as a preliminary injunction.

petition and may consider affidavits of parties or third persons or any other proof which the court may require.

\*\*\*

(c) Any party may move at any time to dissolve an injunction.

Pa.R.C.P. 1531(a) and (c) (footnote added).

This rule has been interpreted as follows.

This court has acknowledged that there is no absolute right to a hearing on a preliminary injunction. **Bell Fuel**, 375 Pa.Super. at 248, 544 A.2d at 455; **Franklin Decorators, Inc. v. Hende–Jon Furniture Showrooms, Inc.**, 339 Pa.Super. 449, 489 A.2d 246 (1985). Nevertheless, "our rules and our case law clearly indicate that a hearing is the preferred procedure. It is the rare preliminary injunction that can correctly be denied without a hearing and **no preliminary injunction can be granted and continued without a hearing, whether before or after the initial grant**." **Bell Fuel**, 375 Pa.Super. at 249, 544 A.2d at 455 (emphasis added). **See also Pubusky v. D.M.F. Inc.**, 428 Pa. 461, 239 A.2d 335 (1968).

In **Pubusky**, **supra**, the trial court initiated a hearing on the requested preliminary injunction. Interrupting defendant's cross-examination of plaintiff and preventing defendant from presenting any evidence or testimony on his own behalf, the lower court discontinued the hearing and granted plaintiff a preliminary injunction. This state's Supreme Court vacated the decree and remanded the case for an evidentiary hearing after concluding that "[i]t is ... fundamental that all of the parties are entitled to a hearing before [a preliminary] injunction should issue." **Id**. at 463, 239 A.2d at 336–37. The court in **Pubusky** further noted that even when circumstances support the issuance of an *ex parte* injunction, a hearing is not excused, but merely delayed for a limited time. **Id**. at 463 n. 1, 239 A.2d at 337 n. 1. **See also Ogontz Controls Co. v. Pirkle**, 329 Pa.Super. 8, 13–14, 477 A.2d 876, 879 (1984), *appeal after remand*, 346 Pa.Super. 253, 499 A.2d 593 (1985) (although the trial court conducted a hearing within five days of issuing an *ex parte* injunction, it erred by continuing the preliminary injunction

without allowing the objecting party to present evidence at the abbreviated hearing)[.]

***WPNT Inc.***, 661 A.2d at 411.

> We frequently have said that a preliminary injunction should not issue at least until the rights of the plaintiff are clearly established. It also is fundamental that all of the parties are entitled to a hearing before such an injunction should issue. While the testimony at a hearing for a preliminary injunction which seeks only to preserve the status of the parties until the issue is finally determined need not always be as extensive as that at a final hearing, the litigants should not be deprived of their right to fully cross-examine all adverse witnesses, nor of the opportunity to present testimony which is relevant to the question of whether or not the injunction should issue. These basic rights were overlooked in this case.

***Pubusky v. D. M. F. Inc.***, 239 A.2d 335, 336-37 (Pa. 1968) (internal quotations and citations omitted).

As the trial court points out, the hearing in this matter has not been completed. ***See*** Trial Court Opinion, 5/30/2014, at 7 ("The hearings are not complete, and the court has reached no final conclusion on whether to issue the preliminary injunction."). Thus, the trial court misapplied law by granting a preliminary injunction under these circumstances.

Moreover, we find the trial court's attempt to couch its order as an "interim special injunction" unavailing. The rules do not provide any basis for such relief. Accordingly, we vacate the March 17, 2014.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/7/2014