# Keeler *versus* Taylor.

1. The general rule is that all restraints of trade, if nothing more appear, are bad.

2. Contracts in restraint of trade to be good at law, must be founded in a valuable consideration, be reasonable and impose no general restraint on trade and industry.

3. Equity will not enforce such contracts although good at law, if their terms be at all hard or even complex; such decrees are of grace, not of right.

APPEAL from the decree of the District Court of *Allegheny county*. In Equity.

Joel F. Keeler filed a bill against William H. Taylor, at April Term 1866, founded upon the following agreement, made March 30th 1857 :—

"This agreement between J. F. Keeler and Wm. H. Taylor, both of Cleveland, O., witnesseth :—

"That said Keeler agrees to instruct said Taylor in the art of making platform scales, and also to employ the said Taylor in the manufacture thereof, paying him the sum of $1.75 per day at the same time.

"The said Taylor agrees in consideration of the foregoing, and of the sum of $1 in hand paid, to attend faithfully to his duties and to the interests of said Keeler while so employed, and to pay to said Keeler, or his legal representatives, the sum of $50 for each and every of said scales which he, Taylor, shall hereafter make for any other person than said Keeler, except with said Keeler's written consent, or which shall be so made in consequence of Taylor's imparting information to others."

The bill set out the agreement, and alleged that Taylor remained for seven years in the employment of Keeler, who "fully instructed him in the business, and paid him larger wages for his services than he had ever received before, in consideration of his promise to pay Keeler a certain sum on every scale he should make for any other person ;" that Taylor left Keeler's employment, and has engaged in making scales on his own account, but has refused to account. An account and decree of payment was prayed for.

The defendant demurred, assigning for causes of demurrer :—

1. That under the contract the defendant agreed to pay complainant only for the scales which he should make while employed by him. Or, if the court are of opinion otherwise, then it is—

2. A contract in restraint of trade, and

3. A bill to enforce penalties.

[Keeler *v.* Taylor.]

The court dismissed the bill without giving any reasons. The complainant appealed, and assigned the dismissal for error.

*S. Harper, J. Veech* and *C. B. M. Smith,* for appellant, cited Smith *v.* Dickenson, 3 Bos. & Pull. 630 ; Cheesman *v.* Nainby, 2 Strange 739 ; Hitchcock *v.* Coker, 1 Nev. & Per. 796 ; s. c. 6 A. & E. 438 ; Leighton *v.* Wales, 3 M. & W. 545 ; Chitty on Contr. 665 ; Rolfe *v.* Peterson, 2 Bro. P. C. 436 ; Astley *v.* Weldon, 2 Bos. & Pull. 346 ; Lowe *v.* Peers, 4 Burr. 2225.

*W. B. Rodgers,* for appellee, cited Mitchell *v.* Reynolds, 1 P. Wms. 181 ; Sedgwick on Dam. 441 ; Beale *v.* Hayes, 5 Sanf. 640 ; Watts *v.* Shepherd, 2 Ala. 425 ; Hare on Discov. 131, 132.

The opinion of the court was delivered, January 7th 1867, by

WOODWARD, C. J.—We agree with the plaintiff's counsel in the construction of the contract upon which this suit is founded. Keeler being a manufacturer of platform scales, and Taylor a mechanic, but not skilled in the mysteries of that particular manufacture, came together in a written agreement, whereby Keeler agreed to instruct Taylor in the art of making platform scales, and to employ him in that business at $1.75 per day.

Taylor on his part engaged to attend faithfully to Keeler's interests whilst so employed, and to pay Keeler, or his legal representatives, $50 for each and every of said scales which he, Taylor, should thereafter make for any other person than Keeler, except with Keeler's written consent, or which shall be so made in consequence of Taylor's imparting information to others.

Taylor worked with Keeler seven years, and then set up for himself in the manufacture of scales, and this bill in equity is brought to compel him to account to Keeler at the rate of $50 for every pair of scales he has manufactured on his own account. Not only is the plaintiff's case within the terms of the contract, but he, and his personal representatives, will have a right to call on Taylor for all his lifetime to account for every pair of scales he makes himself, or which shall be made by any person instructed by him. It is a tax or duty levied upon Taylor, not merely for his own industry for life, but for the industry of all who may derive their information from him. Such is the import of the agreement.

The plaintiff's bill is virtually for the specific execution of this agreement. The District Court dismissed the bill without giving any reasons, and on appeal we are asked to restore it, and to decree an account in favor of the plaintiff.

We are of opinion that the contract was in restraint of trade and industry, and therefore that the bill was properly dismissed.

The general rule is, that all restraints of trade, if nothing more

[Keeler v. Taylor.]

appear, are bad. This was the rule laid down in the famous case of Mitchell v. Reynolds, 1 P. Wms. 181. But to this general rule there are some exceptions, as, if the restraint be only particular in respect to time or place, and there be a good consideration given to the party restrained. Such, indeed, was the case of Mitchell v. Reynolds. It was debt on bond, the condition of which bound the defendant not to exercise the trade of a baker within the parish of St. Andrew's, Holborn, for the term of five years, and this was held to be partial in respect both of time and place. Such partial restraints were upheld in Cheesman v. Nainby, 2 Strange 739; Clark v. Comer, Cas. Temp. Hardw. 53, where a bond was conditioned not to carry on trade in the city of Westminster; in Davis v. Mason, 5 T. R. 118; and in Bunn v. Guy, 4 East 190, where an attorney bound himself not to practise law within London, and 150 miles from thence.

But such partial restraints only make the bond good *at law*. Equity is loth, even then, to enforce them, and will not do so if the terms be at all hard or even complex: Kimberly v. Jennings, 1 Sim. 340. But if the restraint be general, that is, not limited to a reasonable time and district, it is void at law, and of course will not be enforced in equity.

In the reign of Henry V., a plaintiff brought an action against a dyer, upon a bond, whereby the latter bound himself not to use or exercise his craft or trade of dyeing, and Hull, J., as soon as he had heard the bond read, declared it was contrary to the common law, and swore on the bench, by a big oath, that if the plaintiff had been present in court he would have sent him to prison until he paid a fine to the king: 1 Smith's Lead. Cases 516; and Addison on Contracts 99. The law, said Best, C. J., in Home v. Ashford, 3 Bing. 328, will not permit any one to restrain a person from doing what his own interest and the public welfare demand that he should do. Any deed, therefore, by which a person binds himself not to employ his talents, his industry or his capital in any useful undertaking in the kingdom would be void.

The cases are fully collected in Smith's note to Mitchell v. Reynolds, 1 Smith's Leading Cases, and from them it will be seen that all such contracts to be good at law must be founded in a valuable consideration, must be reasonable, and must impose no general restraint upon trade and industry.

Now, admitting that the agreement in this case was founded in a sufficient consideration, is it reasonable to impose such a tribute upon the labor of a mechanic? Is not its direct tendency such as to restrain his skill in a useful art? And even if at law damages might be recovered for breach of such a contract, ought a court of equity to enforce it?

According to the doctrine of the cases, these questions will admit of no answers that are favorable to the plaintiff. He was

[Keeler *v.* Taylor.]

not the inventor and patentee of scales, selling his rights to another. Nothing of that sort appears in the case. It was a sale merely of his handicraft, and whilst the parties were free to fix their own valuation of that, a contract that restrained the industry of the defendant, not in a particular locality, but everywhere, not for a specified period, but for a lifetime, was contrary to public policy and void.

If it were not void, however, a chancellor would regard the hardship of the bargain, and the prejudice to the public, and would withhold his hand from enforcing it, for such decrees are always of grace and not of right.

The decree is affirmed.