## Reading Aviation Service, Inc., Appellant, *v.* Bertolet.

Argued April 26, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Charles H. Weidner,* with him *Howard M. Fry,* and *Stevens & Lee,* for appellant.

*W. Charles Hogg, Jr.,* with him *Richard H. Elliott, John W. Morris, G. Roderick Snyder,* and *Clark, Ladner, Fortenbaugh & Young,* for appellee.

OPINION BY MR. JUSTICE POMEROY, November 26, 1973:

This appeal is from a decree in equity refusing an injunction against appellee Bertolet sought by reason of his alleged breach of an agreement not to compete with appellant.

Appellant, Reading Aviation Service, Inc. ["Reading Aviation"], is engaged in the general aviation business, including the maintenance, repair and sale of aircraft. Since 1946, its principal facility has been located at the Reading Municipal Airport in Berks County. It also has maintenance and sales facilities at Queen City airport in Lehigh County and Allentown-Bethlehem-Easton airport in Northampton County.

Defendant Bertolet was an officer, director, and one of three stockholders of Aviation Consultants, Inc., the parent corporation of Reading Aviation. On July 24, 1968 Aviation Consultants, Inc., Reading Aviation and three other aviation companies joined in a merger, of which Reading Aviation became the surviving entity. Bertolet received a substantial block of stock in the merged corporation and was named President and Chairman of the Board.

Five days after the merger was consummated, Reading Aviation entered into a loan and security agreement with Chase Manhattan Capital Corporation ["Chase Manhattan"], pursuant to which Chase Manhattan advanced Reading Aviation the sum of $1,100,000 and received a warrant to purchase shares of the company's common stock. The agreement required that Reading Aviation obtain non-competition agreements from Bertolet and another key employee. Accordingly, on August 1, 1968 Bertolet wrote a letter to Reading Aviation as follows: "In connection with my employment by you, I hereby agree that so long as I am an officer, director, employee or am otherwise active in your business, I will not own any interest in, or engage in any way, directly or indirectly, in any business competitive with you, or any of your subsidiaries, or solicit or in any other manner or way assist any such competitive business after I have voluntarily ceased to be an officer, director, employee or otherwise active in your business, or any of your subsidiaries." Bertolet received an increase in annual salary from $30,000 to $40,000 effective the same day.

Some two years later, on March 20, 1970, Bertolet ceased to be an officer of Reading Aviation. At that time his salary was reduced to $15,000 per year. He continued in Reading Aviation's employ until May 15th, at which time he went to work for a competing organization. Bertolet is now employed by Reading Public

Aviation, Inc., the other defendant in this suit, which he was instrumental in organizing and which occupies a business location at the Reading airport, some 600 feet away from appellant's place of business.

The chancellor found that Bertolet left his job at Reading Aviation voluntarily, and that the restrictive covenant was ancillary to his employment. He concluded, however, that the covenant was void as an unreasonable restraint since it was without limitation as to time or space and indivisible as to terms. He further found that in any event the covenant had expired in that the loan to Chase Manhattan had been repaid and the warrant to purchase stock had been cancelled. Corporate defendant Reading Public Aviation, Inc. was enjoined from using that name. No appeal has been taken from this part of the chancellor's decree, and that company is not an appellee herein.

Both parties took exceptions to the chancellor's findings of fact and conclusions of law, and several points are pressed on us on this appeal. Reading Aviation contests the finding that its indebtedness to Chase Manhattan has been paid and that therefore the restrictive covenant is no longer in force. Bertolet objects to the finding that he left his employment voluntarily. We need not reach either of these questions in view of our resolution of the pivotal question in this case: whether the non-competition agreement is void on its face because unlimited both in time and space. The chancellor so found on the authority of *Keeler v. Taylor*, 53 Pa. 467, 91 Am. Dec. 221 (1866), and *Henschke v. Moore*, 257 Pa. 196, 101 A. 308 (1917). We think these venerable cases still represent good law, and we accordingly affirm the chancellor's decree.

*Keeler v. Taylor, supra,* involved the validity of a workman's promise to his employer, a scale manufacturer, to pay royalties on scales made for persons other than his employer. The Court said: ". . . (A) contract that restrained the industry of the defendant, not in

a particular locality, but everywhere, not for a specified period, but for a lifetime, was contrary to public policy and void." 53 Pa. at 470. In *Henschke v. Moore, supra,* a patent holder extracted from his licensee a promise not to compete after the termination of the license. Refusing to enforce the promise, the Court noted: "Our Pennsylvania cases follow the distinction between contracts in general restraint of trade, and those in partial restraint. In the former case we have held the restriction to be void, and in the latter that it might be sustained if reasonable." 257 Pa. at 201. These cases, and later cases in which we have sustained reasonable restrictions in more narrowly drawn agreements, see, e.g., *Jacobson & Co. v. International Environment Corporation,* 427 Pa. 439, 235 A. 2d 612 (1967); *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 207 A. 2d 768 (1965); *Barb-Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A. 2d 59 (1965); *Plunkett Chemical Co. v. Reeve,* 373 Pa. 513, 95 A. 2d 925 (1953), essentially reflect the position of the American Law Institute. See Restatement of the Law of Contracts, §§513 ff. (1932). Of particular pertinence here is §518: "Where a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a monopoly; *but if full performance of a promise indivisible in terms, would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint."* (Emphasis supplied.)

Because of the inherently unequal bargaining positions of the parties, we have consistently subjected covenants of non-competition between employees and their employers to close scrutiny. *Albee Homes, Inc. v. Caddie Homes, Inc., supra; Morgan's Home Equipment Corporation v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957). In the present case, we think the open-

ended restrictions on Bertolet impose an unconsciona-
ble burden on his ability to pursue his chosen occupa-
tion. At the same time, these restrictions are far
greater than are reasonably necessary for the protection
of Reading Aviation. Moreover, even under the most
liberal interpretation of the "divisible promises" rule
of §518 of the Restatement, we see no basis for decreeing
partial enforcement of the covenant. In §1647C of
Williston's treatise on contracts (Third Edition, 1972),
the authors point out the possible adverse consequences
if courts rewrite agreements of this sort to bring them
within the bounds of reasonableness: "The objection
to such a practice is that it tends to encourage employ-
ers and purchasers possessing superior bargaining pow-
er over that of their employees and vendors to insist
upon unreasonable and excessive restrictions, secure in
the knowledge that the promise may be upheld in part,
if not in full."

The decree of the court below is affirmed. Costs
on appellant.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority solely
on the ground that the covenant not to compete became
ineffective as soon as the loan from Chase Manhattan
Capital Corporation was repaid by appellant.[1]

---

[1] Appellant contends that the chancellor erroneously considered
appellee's defense based on the loan having been repaid because
the issue was not raised in appellee's answer. See *Snyder v.
Barber*, 378 Pa. 377, 382-83, 106 A.2d 410, 412-13 (1954); *Real
Estate Co. v. Rudolph*, 301 Pa. 502, 505, 153 A. 438, 439 (1930).
However, the testimony upon which the chancellor based his find-
ings was introduced into evidence without objection. Our rule
is that an appellate court will treat the pleadings as amended to
conform to the proof, if the case has been tried on the merits and
there was no objection to the variance between pleadings and proof.
*Srednick v. Sylak*, 343 Pa. 486, 491, 23 A.2d 333, 336 (1942).

The chancellor found that the covenant not to compete was "important consideration" to Chase Manhattan, and without it Chase Manhattan would not have entered into a loan agreement with appellant. Only the insistence of Chase Manhattan brought the covenant into existence. When making the loan to appellant, Chase Manhattan sought to protect its investment by insuring that should appellant lose a key employee, then at least he would not be able to compete with appellant. The chancellor further found that this loan and the interest on it had been fully paid by appellant.

These findings were approved by the court en banc. It is well established that, absent an error of law or an abuse of discretion, the chancellor's findings of fact adopted by the court en banc, if supported by sufficient evidence,[2] will not be disturbed on appeal. *Hatalowich*

_____

[2] In reaching his determination, the chancellor had the following evidence before him. Appellee had worked for appellant for over twenty years without appellant asking him to enter into a covenant not to compete.

On August 1, 1968, appellant obtained a loan of $1,100,000 from Chase Manhattan Capital Corporation, under a loan and security agreement dated July 29, 1968. The loan and security agreement between Chase Manhattan and appellant contained an express condition that a non-competition agreement was to be obtained by appellant from its key employees. Appellee was specifically designated as a key employee. The clause further required that the covenant be "in form and substance satisfactory to the Lender." Appellee's letter of August 1, 1968, which served as the non-competition agreement, virtually reproduced the language of the clause in the security and loan agreement. Louis L. Allen, president of Chase Manhattan Capital Corporation, testified that the covenant not to compete was to remain in effect until "the loan agreement had been fully paid and satisfied."

Mr. Allen was further asked by appellee on cross-examination: "Now, has that loan [$1,100,000] been paid off?" The witness responded: "Well, in a way, yes, it has. We have exchanged our notes for stock and made additional advances." The evidence also

*v. Redevelopment Authority,* 454 Pa. 481, 312 A.2d 22 (1973); *Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 414-15, 305 A.2d 689, 691-92 (1973), cert. denied, 414 U.S. 1158, 94 S. Ct. 916 (1974); *Lefkowicz v. Blumish,* 442 Pa. 369, 371, 275 A.2d 69, 70-71 (1971); *Pittsburgh Outdoor Advertising Co. v. Virginia Manor Apartments, Inc.,* 436 Pa. 350, 353, 260 A.2d 801, 803 (1970).

Because the covenant was solely for the protection of appellant's creditor, Chase Manhattan Capital Corporation, and because that creditor's loan was repaid, the contractual basis for the covenant has expired. There is now no ground for enforcing the covenant.

---

tended to show that Chase Manhattan converted a debt of $1,260,000 ($1,100,000 plus interest) for an equity position in appellant-corporation. Although appellant still is indebted to Chase Manhattan, according to Mr. Allen, "the majority of our [Chase Manhattan's] advances occurred after June of 1970." This was well after the time when appellee ceased to be an employee of appellant.

This evidence certainly was sufficient to sustain the chancellor's findings of fact approved by the court en banc.