### In re Daniel G. MONAGHAN, Debtor.

### TVC SUPPLY COMPANY, INC., Plaintiff,

v.

### Daniel G. MONAGHAN, Defendant.

#### Bankruptcy No. 91–21664T.
#### Adv. No. 91–2274.

United States Bankruptcy Court, E.D. Pennsylvania.

June 11, 1992.

---

Barry A. Solodky, Blakinger, Byler & Thomas, Lancaster, Pa., for defendant.

Walter H. Flamm, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

## OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

Before the court is defendant's motion under Fed.R.Civ.P. 50(a) for judgment as a matter of law.[1] As we find, after viewing the evidence in the light most favorable to plaintiff, that insufficient evidence was presented from which a jury could reasonably find for plaintiff, we grant defendant's motion. A brief recitation of the relevant facts follows.

Plaintiff is in the business of selling a full line of products to the cable television

---

1. Prior to December 1, 1991, this motion was referred to as a motion for a directed verdict. As the Notes of the Advisory Committee on Proposed Rules make clear this change in nomenclature is merely technical, no change in substance was effected and the standard of review remains the same. *Notes of Advisory Committee on Proposed Rules,* subdivision (a).

industry. On July 24, 1983, plaintiff and defendant executed an employment agreement which included, in paragraph 7, a clause prohibiting defendant from disclosing confidential information both during and after his employment with plaintiff. This agreement did not contain a covenant restricting defendant's ability to work for a competitor after his employment relationship with plaintiff ceased. Defendant continued to work as a salesman for plaintiff until early October of 1989, when he resigned. Several days later, defendant had a change of heart and contacted plaintiff's President, Mr. Ackerman, to discuss the possibility of reemployment. During these discussions, Mr. Ackerman explained to defendant that he was concerned about defendant's past history of threatening to quit. Defendant then told Mr. Ackerman that he would not go to work for a competitor and offered to sign a document requiring that he not leave plaintiff's employ to compete for three years. Additionally, defendant sent Mr. Ackerman two letters which contained representations that he would not work for a competitor.

On October 23, 1989, defendant was rehired by plaintiff as a salesman. Thereafter, Mr. Ackerman, without the advice of an attorney, drafted a document which was dated October 23, 1989 and which stated, *inter alia:*

\* \* \* \* \* \*

In consideration of granting you re-employment with TVC Supply Company, Inc. effective October 23, 1989, you have agreed not to seek nor accept employment elsewhere for a minimum of three years from this date.

Further, you agree to be bound by the Non-disclosure of Confidential Information as stated in your original employment letter of July 24, 1983, a copy of which is attached.

\* \* \* \* \* \*

This document was not signed by defendant until December 4, 1989. The employment relationship continued until approximately June 25, 1991, when defendant once again resigned. Thereafter, defendant began working for Midwest CATV, a direct competitor of plaintiff's, as a salesman. Plaintiff then instituted this action seeking to enjoin defendant from breaching the restrictive covenant contained in the parties' December 4, 1989 agreement. A hearing was held on plaintiff's motion for a preliminary injunction and an order was entered denying the motion. However, defendant agreed to abide by paragraph 7 of the parties' July 24, 1983 agreement (the non-disclosure of confidential information clause) and a consent order was entered to this effect from the bench. Thereafter, a hearing was held on plaintiff's injunction complaint. At the conclusion of plaintiff's case, defendant made an oral motion to dismiss, which we treated as a motion under Fed.R.Civ.P. 50(a), now known as a motion for judgment as a matter of law.

We begin our analysis with a discussion of the standard we must follow when deciding a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a). Such a motion may only be granted if, after reviewing the evidence in the light most favorable to the opposing party, in this case, plaintiff, and giving the opponent the advantage of every fair and reasonable inference, the court concludes that there is insufficient evidence from which a jury could find for the opposing party. *Laskaris v. Thornburgh,* 733 F.2d 260, 264 (3rd Cir.1984), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). As stated by the Third Circuit Court of Appeals in *Laskaris v. Thornburgh,* 733 F.2d at 264, "[a] court cannot weigh the evidence or judge its credibility. If there is conflicting evidence that could reasonably lead to inconsistent inferences, a verdict may not be directed."

We now turn to the substantive Pennsylvania law concerning the enforceability of restrictive covenants. In general, to be enforceable a covenant not to compete must: *(1)* be ancillary to an employment contract or to a contract for the sale of a business, *(2)* be supported by adequate consideration, *(3)* be reasonably limited in terms of activity, time and geographic extent, and *(4)* be reasonably necessary to protect legitimate interests of the employ-

er. *Westec Security Services, Inc. v. Westinghouse Electric Corporation,* 538 F.Supp. 108 (E.D.Pa.1982); *Sidco Paper Company v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *George W. Kistler, Inc. v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975). In the case before us, the restrictive covenant was ancillary to an employment contract and accordingly, meets the first prong of the enforceability test. Additionally, we find that a binding oral employment agreement existed which included the restrictive covenant at issue. As recognized by the Pennsylvania Supreme Court in *George W. Kistler, Inc. v. O'Brien,*[2] *supra,* parties may bind themselves contractually through mutual manifestation of assent prior to the execution of a written agreement. Since the restrictive covenant was part of the oral agreement, we find that adequate consideration existed for the restrictive covenant in the form of plaintiff's offer of reemployment to defendant and, therefore, the second prong of the enforceability test has been met. *See, Jacobson & Company, Inc. v. International Environment Corporation,* 427 Pa. 439, 235 A.2d 612 (1967). We next address the third and fourth prongs of the enforceability test, and for the reasons outlined below, we find that this covenant cannot pass muster under these prongs of the test.

 A review of the covenant clearly reveals that it does not contain any restrictions on geographic limitation or on the type of employment or activity prohibited. Rather, the covenant prohibits defendant from being employed by anyone other than plaintiff for a period of three years from the date that the contract was executed. In effect, the covenant enslaves defendant to plaintiff for three years. We find this covenant severely overbroad and not rea-

sonably necessary to protect any legitimate interest of plaintiff. Although Pennsylvania courts of equity will, in certain situations, reform an overbroad covenant and grant enforcement to the limited extent necessary to protect the legitimate interests of the employer, *see, Westec Security Services, Inc. v. Westinghouse Electric Corporation, supra; Sidco Paper Company v. Aaron, supra, Barb–Lee Mobile Frame Company v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965), they will not do so when the gratuitous overbreadth contained in the covenant indicates an intent to oppress the employee or to foster a monopoly, *see, Sidco Paper Company v. Aaron, supra* (interpreting prior Pennsylvania Supreme Court decision in *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973)); *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973); *Bell Fuel Corporation v. Cattolico,* 375 Pa.Super. 238, 544 A.2d 450 (1988). The covenant at issue, by prohibiting defendant from being employed by anyone other than plaintiff for the first three years of the employment contract severely oppresses defendant and evinces an intent to insure that defendant remains in plaintiff's employ for three years[3] rather than an intent to protect plaintiff's legitimate interest in customer goodwill acquired through defendant's efforts.[4]

Finally, we note that the cases involving reformation of restrictive covenants, *see, Westec Security Services, Inc. v. Westinghouse Electric Corporation, supra; Sidco Paper Company v. Aaron, supra; Jacobson & Company, Inc. v. International Environment Corporation, supra; Barb–Lee Mobile Frame Company v. Hoot, supra,* involved covenants which were much

---

**2.** The facts in our case differ from those presented in *George W. Kistler, Inc. v. O'Brien, supra,* since in that case the court found that the restrictive covenant was not part of the prior oral employment agreement.

**3.** Mr. Minari, plaintiff's vice president and general manager, testified on direct examination that the intent of the restrictive covenant was to "put to bed, for a period of three years, [defendant's] seeking employment with one of our competitors." This testimony, when combined

with Mr. Ackerman's testimony that he was concerned about plaintiff's past history of threatening to quit clearly shows that plaintiff was primarily interested in making sure defendant remained in its employ for at least three years.

**4.** We note that this legitimate interest continues to be protected by this court's bench consent order requiring that defendant comply with paragraph 7 of the parties' July 24, 1983 written employment agreement.

more definitive then the covenant before us today and which bore some resemblance to the standard restrictive covenant ordinarily found in an employment agreement. Such a covenant ordinarily begins to run on the date of the employee's departure and prohibits the employee from engaging in a defined competitive activity in a defined geographic area for a defined period of time. As so phrased, the standard restrictive covenant seeks to prevent the employee from using unfair advantage to compete with the employer, but is sufficiently limited in terms of activity, time and geographic area so as not to oppress the employee. The covenant in the case before us, however, begins to run on the date that defendant's employment relationship with plaintiff commenced and expires three years thereafter and prohibits defendant from working for anyone other than plaintiff (not just a competitor) during this period of time.[5] As phrased, this covenant bears no resemblance to the standard restrictive covenant ordinarily found in an employment agreement and is so severely overbroad as to evince an intent to oppress defendant. Accordingly, this covenant cannot be reformed.

An appropriate order follows.

### ORDER

AND NOW, this 11th day of June, 1992, it is ORDERED that defendant's motion for judgment as a matter of law under Fed.R.Civ.P. 50(a) is GRANTED.

---

5. Had defendant resigned after his third year anniversary with plaintiff, this restrictive covenant would have expired and defendant would not have been hindered by it, even though he would have had more time on the job during which he would have gained more extensive exposure to plaintiff's customers and would therefore appear to present a greater threat to plaintiff.