J-A12016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH PHYSICIAN NETWORK, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN KUTZ, M.D. | : | |
| | : | |
| | : | No. 1242 MDA 2023 |

Appeal from the Order Entered August 17, 2023
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2023-02112

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:            **FILED: MARCH 18, 2025**

Appellant, Commonwealth Physician Network, LLC, appeals from the order entered in the Lackawanna County Court of Common Pleas, which denied its motion for immediate injunctive relief. We affirm.

The relevant facts and procedural history of this case are as follows. On August 7, 2017, Appellee, John Kutz, M.D., entered into an employment agreement ("Agreement") with Appellant. The Agreement included a non-competition and non-solicitation restrictive covenant that 1) prohibited Appellee from practicing medicine or performing surgery within 20 miles of his medical office and the hospital location for a period of two years upon termination, expiration, or non-renewal of the Agreement, and 2) prohibited

_____

[*] Former Justice specially assigned to the Superior Court.

Appellee from soliciting patients of Appellant for a period of one year upon expiration or termination of the Agreement.[1] On January 26, 2023, Appellant informed Appellee that it would not renew his employment contract, and that his employment would end on April 30, 2023.

On May 15, 2023, Appellee began practicing medicine at Geisinger Community Medical Center ("Geisinger-CMC"), which is located approximately

---

[5] The restrictive covenants in the Agreement between Appellant and Appellee state, in pertinent part:

> As a material inducement for [Appellee] to enter into [the Agreement], [Appellee] agrees that during the Term and for a period of two (2) years following the termination, expiration, or nonrenewal of [Appellee's employment], [Appellee] shall not engage in the practice of medicine or surgery within the Restricted Area…on behalf of any other person or entity other than [Appellant].

> \* \* \*

> The term "Restricted Areas" shall mean the area within a twenty (20) mile radius of the Medical Office and the area within a twenty (20) mile radius of the Hospital.

> \* \* \*

> [Appellee] shall not, for a period of one (1) year immediately following the expiration or earlier termination of the Agreement, directly or indirectly, call on, solicit, take away, or attempt to call on, solicit, take away, without [Appellant's] prior written consent, any person who is, during the Term of the Agreement, or who was at the time of the expiration or termination of the Agreement, a patient of [Appellant].

(Agreement, attached to Appellant's Motion for Immediate Injunctive Relief, filed 5/17/23, at Exhibit A).

- 2 -

one mile from Appellant's location. On May 17, 2023, Appellant filed a complaint raising claims for declaratory and injunctive relief, and a separate motion seeking a preliminary injunction.

On May 22, 2023, the parties appeared before the court for a hearing concerning Appellant's motion for an injunction.[2] Appellant presented the testimony of Appellee as if on cross-examination, as well as the testimony of Patricia Kane, Appellant's chief operating officer, and Patrick Conaboy, M.D., Appellant's chief medical officer, and expert testimony from Richard Parker, M.D., regarding physician practice and hospital management.

Appellee testified that he understood the terms and conditions of the restrictive covenants in the Agreement, but he was under the impression that Appellant would release him from the restrictive covenants. (N.T. Hearing, 5/22/23, at 19). Appellee testified that he commenced employment at Geisinger-CMC on May 15, 2023. Appellee explained that he did not attempt to solicit any patient on the patient list from Appellant, but that Ms. Kane provided the list upon her own initiative. Appellant stated that he forwarded the list to Geisinger-CMC, but that he immediately directed Geisinger-CMC not to solicit any patients when he found out that Appellant was not releasing him

_____

[2] The parties refer to the proceeding on May 22, 2023 as both a bench trial and a hearing. Because we are considering Appellant's appeal from the denial of its motion for a preliminary injunction, and not considering disposition of the case on the merits, we refer to the proceeding on May 22, 2023 as a hearing.

from the restrictive covenants. (*Id.* at 31).

Ms. Kane testified that she informed Appellee that his contract would not be renewed, describing the contract's lopsided nature with Appellee receiving a high salary yet putting forth low production. (*Id.* at 55). Ms. Kane conceded that Appellant did not have a board certified vascular surgeon in Scranton; although Appellant had recently hired a board certified vascular surgeon, Dr. Choudry, he would be working out of Wilkes-Barre General Hospital and patients in the Scranton area would have to travel to Wilkes-Barre. (*Id.* at 86, 88). Ms. Kane also testified that she forwarded to Appellee his patient list, explaining that she did so under the belief that he would be opening a private practice. (*Id.* at 57-58).

Dr. Conaboy testified that Appellant had an open position advertising for a vascular surgeon, but there was not an emergency gap to fill because patients' vascular surgery needs could be taken care of by ancillary services. Dr. Conaboy conceded that Appellant did not hire a locum tenens vascular surgeon to cover the Scranton market. (*Id.* at 122). Dr. Conaboy explained that when patients needed the services of a board certified vascular surgeon, Appellant would like the patients to go to Wilkes-Barre. (*Id.* at 129).

Appellee presented the expert testimony of Margo Opsasnick, former chief executive officer of Delta Medix, regarding the operation and management of physician practice groups and hospital administration. Ms. Opsasnick testified that the departure of Appellee as a vascular surgeon in the

Scranton catchment area would be a public health emergency from a statistical standpoint because the number of board certified vascular surgeons in the area could not support the needs of the area.

After the hearing, the parties submitted supplemental briefs to the court. Attached to Appellant's brief was an affidavit from Ms. Kane in which she averred that "since [Appellee's] departure, [Appellant] has received at least seventy-three (73) formal medical record requests from [Appellee's] patients" and that in her experience, "these medical records requests from [Appellee's] patients may be indicative of their desire to leave [Appellant], and transfer their medical care to a different system." (Affidavit of Patricia Kane, dated 8/8/23, at 2). Ms. Kane further stated that Appellant hired a board certified vascular surgeon, who would work out of his office in Plains, Pennsylvania and would serve patients from both Wilkes-Barre and Scranton.

On August 17, 2023, the trial court issued an opinion and order denying Appellant's motion for immediate injunctive relief. Specifically, the court noted that Appellant had failed to show a breach of a restrictive covenant or otherwise establish a clear right to relief.[3] On August 31, 2023, Appellant filed a notice of appeal. The court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant did not file one.

_____

[3] The court's opinion accompanying its order also appears to deny relief on the claims raised in the underlying complaint, which were similar to those raised in the separate motion for injunctive relief.

On December 12, 2023, this Court issued a rule to show cause questioning the appealability of the order. On December 14, 2023, Appellant responded to the rule to show cause, insisting that the order was immediately appealable under Rule 311(a)(4)(ii)[4] because it changed the status quo and permitted Appellee to violate the Agreement. Appellant argued that the order denying its motion for injunctive relief "permitted" conduct by Appellee that was not previously allowed, namely, the alleged ongoing violation of the restrictive covenants in the Agreement. Appellant asserted that the order upset the Agreement that it had bargained for with Appellee, and that it had lost patients as well as proprietary, confidential lists of patient names based on the court's failure to grant injunctive relief.

Appellee subsequently filed a response in opposition insisting that the status quo had not been changed as a result of the court's denial of injunctive relief because he had been employed with Geisinger-CMC before, during, and after the adjudication of Appellant's request for injunctive relief. Appellee pointed out that, regardless of the content of the Agreement, his conduct was never "barred" nor "not permitted" because he was practicing medicine during that entire period. Further, Appellee suggested that the restrictive covenants did not bar his conduct because the trial court ultimately denied injunctive

---

[4] We discuss this Rule in greater detail *infra*.

relief and found that the restrictive covenants were unenforceable.[5]

As a preliminary matter, we must determine whether this appeal is properly before us.[6]  "Generally, [f]or an order to be appealable, it must be (1) a final order, (2) an interlocutory order appealable by right or permission, or (3) a collateral order."  **Dovin v. Honey Brook Golf Club L.P.**, 325 A.3d 1282, 1287-88 (Pa.Super. 2024) (citations omitted; brackets in original).  Pennsylvania Rule of Appellate Procedure 311 sets forth the criteria for interlocutory appeals by right and provides, in pertinent part, as follows:

**Rule 311.  Interlocutory Appeals as of Right**

---

[5] On February 2, 2024, this Court discharged the rule and referred the issue to the merits panel.

[6] We reiterate that Appellant's current appeal lies from the denial of its motion for immediate injunctive relief.  Nevertheless, to the extent Appellant is also seeking to appeal from the court's implicit denial of the claims raised in the underlying complaint, such an appeal is not properly before us because Appellant failed to file post-trial motions.  **See Affordable Outdoor, LLC v. Tri-Outdoor, Inc.**, 210 A.3d 270, 279 n.12 (Pa.Super. 2019) (noting "judgment for purposes of appeal is the initial order declaring rights as to which post-trial motions are filed, such that the appeal is triggered by the order denying post-trial motions, not a subsequent entry of judgment on *praecipe*").  **See also Motorists Mut. Ins. Co. v. Pinkerton**, 574 Pa. 333, 344, 830 A.2d 958, 964 (2003) (stating: "[P]ost-trial declaratory judgment orders, just like other post-trial orders, are subject to the post-trial motion procedures in Rule 227.1").

This Court has held that a party is not required to file a motion for post-trial relief when appealing pursuant to Rule 311.  **Dovin, supra** at 1289 (citing **Thomas A. Robinson Family LP v. Bioni**, 178 A.3d 839, 846 (Pa.Super. 2017), *appeal denied*, 648 Pa. 568, 194 A.3d 560 (2018)).  Furthermore, "[f]iling an appeal from an injunction under Rule 311(a)(4) is not mandatory, and an appellant may elect instead to engage in normal post-trial procedures and then appeal from a final judgment."  **Thomas A. Robinson Family LP, supra** at 847 n.11.

> **(a) General Rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from the following types of orders:
>
> \* \* \*
>
> (4) *Injunctions*. An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction **unless the order was entered**:
>
> \* \* \*
>
> > (ii) After a trial but before entry of the final order. **Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order**.

Pa.R.A.P. 311(a)(4)(ii) (emphasis added). Rule 311(a)(4)(ii) is designed to allow immediate appeal of injunctions that alter the status quo, to permit parties quick recourse without the delays associated with post-trial proceedings. **Dovin, supra** at 1289.

A party seeking a preliminary injunction must show that the injunction will restore the parties to the status quo—the same legal position as existed prior to the alleged wrongful conduct. **Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.**, 573 Pa. 637, 647, 828 A.2d 995, 1001 (2003). **See also Ambrogi v. Reber**, 932 A.2d 969, 974 (Pa.Super. 2007) (explaining that purpose of preliminary injunction is simply to maintain status quo until case can be investigated and adjudicated). "The status quo to be maintained by a preliminary injunction is the legal status that preceded the pending

- 8 -

controversy." ***The York Group, Inc. v. Yorktowne Caskets, Inc.***, 924 A.2d 1234, 1244 (Pa.Super. 2007) (emphasis omitted).

Here, the allegedly wrongful conduct is Appellee starting employment at Geisinger-CMC, which allegedly violated the Agreement. Immediately prior to this wrongful conduct, Appellee was not employed at Geisinger-CMC and was not allegedly in breach of the Agreement; and Appellee's list of patients while he worked at Appellant had not been shared. Thus, we agree with Appellant that the denial of injunctive relief in this case resulted in a change in the status quo between the parties, as it allowed conduct which would have otherwise not been permitted if the restrictive covenants of the Agreement were enforced. ***See Summit Towne Ctr., Inc., supra***; ***The York Group, Inc., supra***; Pa.R.A.P. 311(a)(4)(ii). Accordingly, we conclude that this Court has jurisdiction over Appellant's immediate appeal of the denial of its motion for a preliminary injunction under Rule 311(a)(4)(ii).

As a second preliminary matter, we must consider whether Appellant's claims concerning the enforceability of the restrictive covenants are moot. As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot.

> An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law[.] In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*Lico, Inc. v. Dougal*, 216 A.3d 1129, 1132 (Pa.Super. 2019) (quoting *In re R.D.*, 44 A.3d 657, 680 (Pa.Super. 2012)). It is well settled that "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired." *Davis v. Buckham*, 421 A.2d 427, 431 (Pa.Super. 1980) (quoting *Hayes v. Altman*, 438 Pa. 451, 455, 266 A.2d 269, 271 (1970)).

Here, the non-competition restrictive covenant in the Agreement prohibited Appellee from practicing medicine within 20 miles for a two-year period, and the non-solicitation restrictive covenant prohibited Appellee from soliciting Appellant's patients for a one-year period following his termination. Appellee's employment with Appellant ended on April 30, 2023. Consequently, the non-solicitation restrictive covenant expired one year later, on April 30, 2024. We therefore conclude that Appellant's claims concerning denial of the preliminary injunction regarding the non-solicitation restrictive covenant is moot. *See Davis, supra*. *See also Lico, Inc., supra*. Nevertheless, the non-competition restrictive covenant has a two-year duration and does not expire until April 30, 2025. As such, our review is limited to whether the trial court erred in denying Appellant's request for a preliminary injunction concerning only the non-competition restrictive covenant.

We now turn to the issues Appellant raises on appeal:

> [Whether] the trial court abused its discretion when it found that [Appellant] did not have a clear right to relief nor was

likely to prevail on the merits?

Whether the trial court committed an error of law and abused its discretion when it found that the restrictive covenant would adversely affect the public interest?

Whether the trial court abused its discretion when it denied [Appellant's] motion for immediate injunctive relief where [Appellant] met all six prerequisites for a preliminary injunction?

Whether the trial court abused its discretion when it admitted Margo Opsasnick as an expert and credited her testimony although she did not meet the minimum threshold to qualify as an expert?

Whether the trial court committed an error of law and abused its discretion when it declared that [Appellant] abandoned the Scranton "catchment" area?

(Appellant's Brief at 2-3).

Our review of the denial of a preliminary injunction implicates the following principles:

> Our scope of review is plenary. [O]ur [standard of] review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential." This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. [W]e do not inquire into the merits of the controversy[.] Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the

- 11 -

decision of the trial court.

> A trial court has "apparently reasonable grounds" for granting the extraordinary remedy of preliminary injunctive relief if it properly finds that all of the "essential prerequisites" are satisfied.

**Synthes USA Sales, LLC v. Harrison**, 83 A.3d 242, 248-49 (Pa.Super. 2013) (internal citations and some quotation marks omitted).

> There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest. The burden is on the party who requested preliminary injunctive relief[.]

**Warehime v. Warehime**, 580 Pa. 201, 209-10, 860 A.2d 41, 46-47 (2004) (internal citations omitted).

> A decision addressing a request for a preliminary injunction thus requires extensive fact-finding by the trial court because the moving party must establish it is likely to prevail on the merits. Simply the moving party must establish a *prima facie* right to relief. If the moving party's right to relief is unclear, then a preliminary injunction should not issue.

**Synthes, supra** at 249-50 (internal citations and footnote omitted). "In the

preliminary injunction context, we have further observed that if the evidence supports a trial court's factual finding, we will conclude that there are apparently reasonable grounds for that determination." ***Shepherd v. Pittsburgh Glass Works, LLC***, 25 A.3d 1233, 1245 (Pa.Super. 2011).

When deciding whether a party's right to relief is "clear," the right to relief "must be more than merely 'viable' or 'plausible.'" ***Ambrogi, supra*** at 980.

> However, this requirement is not the equivalent of stating that no factual disputes exist between the parties. We do not attempt to determine whether the party seeking the preliminary injunction is guaranteed to prevail because our review of a decision regarding a preliminary injunction does not reach the merits of the controversy. The proper question is whether the party seeking the preliminary injunction produced sufficient evidence to show that substantial legal questions must be resolved to determine the rights of the respective parties.

***Id.*** (internal citations omitted).

For purposes of disposition, we consider Appellant's first and fifth issues together. In its first issue, Appellant argues that the restrictive covenant in this case related to protecting a variety of its legitimate business interests.[7] Appellant claims the non-competition restrictive covenant is reasonably limited in duration and scope. Appellant submits that it has a legitimate

---

[7] Much of Appellant's argument on this point concerns its legitimate business interest in protecting its confidential patient list. Nevertheless, as we have already explained, Appellant's claims with respect to the patient list and solicitation of patients are moot. Hence, we discuss only those legitimate business interests related to the non-competition restrictive covenant.

- 13 -

business interest in customer goodwill, protecting its preexisting relationship with its patients arising from a continuous course of business. Appellant maintains that it lost 73 vascular surgery patients in the month after Appellee started working at Geisigner-CMC, and it had a protected interest in the patient goodwill of those 73 patients. Appellant further avers that the trial court erred in finding that it had abandoned the vascular surgery business in Scranton. Appellant maintains that it still provides vascular services in Scranton, and the fact that it had not yet found a replacement for Appellee does not mean that it had abandoned the market. Appellant concludes the court erred by failing to find the restrictive covenant protected a legitimate business interest and by failing to conclude that Appellant demonstrated a clear right to relief. We disagree.

"Pennsylvania courts have historically been reluctant to enforce contracts that place restraints on trade or on the ability of an individual to earn a living; however, post-employment non-competition covenants are not *per se* unreasonable or unenforceable." ***WellSpan Health v. Bayliss***, 869 A.2d 990, 996 (Pa.Super. 2005). Importantly:

> At a minimum, for a non-competition or restrictive covenant to be enforceable, it must be reasonably related to the protection of a legitimate business interest. The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program. In contrast, a post-employment covenant that merely seeks to eliminate competition *per se* to give the employer an economic advantage is generally not

enforceable.

*Id.* at 996-97 (internal citations and quotation marks omitted). The presence of a legitimate, protectable business interest is a threshold requirement for an enforceable restrictive covenant. *Hess v. Gebhard & Co. Inc.*, 570 Pa. 148, 163, 808 A.2d 912, 920 (2002).

"The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program." *WellSpan Health, supra* at 996. "The interest protected under the umbrella of goodwill is a business's positive reputation." *WellSpan Health, supra* at 997. *See also John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 9, 369 A.2d 1164, 1168 (1977) (holding Pennsylvania recognizes business interest in preserving customer relationships established by employees on employer's behalf); *West Penn Specialty MSO, Inc. v. Nolan*, 737 A.2d 295, 299 (Pa.Super. 1999) (holding physician's violation of restrictive covenant damaged existing patient relationships with prior employer where approximately 125 patients elected to follow her, and based on strength of physician's relationships with patients, this reasonably foreshadowed continuing exodus of patients).

"Goodwill represents a preexisting relationship arising from a continuous course of business which is expected to continue indefinitely." *WellSpan Health, supra* at 997. Our Supreme Court has also recognized confidential

information or a trade secret as a second protectable interest. "A trade secret may include a compilation of information which is used in one's business that gives one an opportunity to obtain an advantage over competitors." *Id.* at 997 (citation and internal quotation marks omitted). However, "if a competitor could obtain the information by legitimate means, it will not be given injunctive protection as a trade secret." *Id.* In addition, when an employer provides its employees with specialized training, such efforts and money invested may be considered a protectable interest. *Id.* Finally, this Court has explained that "a patient referral base and the investments needed to generate that base constitute a protected interest." *Id.* at 998.

Significantly, however, this Court has explained that

> **a non-competition covenant applied to a geographical area in which the employer does not compete is unreasonable**. Our case law makes clear that, to be enforceable, a non-competition covenant must be reasonably necessary for the protection of the employer. *Hess, supra* at 157, 808 A.2d at 917. If, as the trial court found here, an employer does not compete in a particular geographical area, enforcement of a non-competition covenant in that area is not reasonably necessary for the employer's protection.

*WellSpan Health, supra* at 1001 (emphasis added).

Once the threshold requirement of a protectable business interest is met:

> [T]he next step in analysis of a non-competition covenant is to apply the [requisite] balancing test…. First, the court balances the employer's protectable business interest against the employee's interest in earning a living. Then, the court balances the employer and employee interests

- 16 -

with the interests of the public.

> In weighing the competing interests of employer and employee, the court must engage in an analysis of reasonableness. First, the covenant must be reasonably necessary for the protection of the employer. In addition, the temporal and geographical restrictions imposed on the ex-employee must be reasonably limited. The determination of reasonableness is a factual one, requiring consideration of all the facts and circumstances, with the party claiming unreasonableness as a defense against enforcement of the covenant bearing the burden of proof.

*Id.* at 999 (internal citations omitted). "Generally, our determination of reasonableness of time and territory has involved a weighing of competing interests—that of the employer's need for protection—against the hardship of the restriction to be imposed upon the employee." *Insulation Corp. of America v. Brobston*, 667 A.2d 729, 734 (Pa.Super. 1995).

Where a covenant not to compete is overly broad, courts have discretion to grant enforcement limited to those portions of the restrictions which are reasonably necessary to protect the employer. *Hess, supra* at 162-63, 808 A.2d at 920. *See also Reading Aviation Service, Inc.*, 454 Pa. 488, 311 A.2d 628 (declining partial enforcement of non-compete covenant due to policy concern that courts should refrain from rewriting agreements, which could encourage employers to draft unreasonable restrictions knowing court can later enforce agreement, at least in part, by reforming restrictive covenant); *WellSpan Health, supra* (discussing court's authority to "blue pencil" or "blue-line" unreasonable restrictive covenant).

Instantly, the trial court found that Appellant failed to demonstrate a

legitimate protectable interest. The court noted that Appellant did not provide any testimony about "erosion of a patient referral base and the viability of its programs, loss of business opportunity or market disadvantages." (Trial Court Opinion, 8/17/23, at 10). The trial court further explained that Appellant did not provide any testimony or evidence about damage to existing patient relationships. The court noted that "[Appellant] also failed to provide any support that [Appellee's] patients are actively utilizing 'multi-modality,' care or referral linkage under [Appellant's] system." (*Id.*) Furthermore, the court explained that "[Appellant] provided no evidence of disrupting patients' relationships with multiple physicians or expansion of their services and plans to create a more prominent presence." (*Id.*)

The trial court determined that the record did not support that Appellant made a significant investment in Appellee, and that "considering all the relevant facts and circumstances, the interest of [Appellant] is too attenuated and does not demonstrate a recognized protectible business interest." (*Id.* at 15). The court continued:

> The record reveals that [Appellant] is not seeking a board-certified vascular surgeon for the Scranton catchment area. [Appellant] wants all vascular surgery patients to travel to Wilkes-Barre. [Appellant] wants vascular procedures to be broadly absorbed by general surgery, cardiology, and interventional radiology. [Appellant] terminated [Appellee's] employment for insufficient productivity. [Appellant's] testimony revealed that [Appellee's] worth to [Appellant] is "presumably insignificant," as he "wasn't the horse that was going to do that." [Appellee] was labeled: "a lopsided contract," with "low production and a high salary."

Pure financial gain at the expense of restricted competition does not constitute a protectible business interest. Indeed, [Appellant] referred to physicians as "assets," stating "you would take your assets as a CEO and move them around [...] you fill assets where assets are needed and to be replenished?" Dr. Parker, [Appellant's] expert witness testified that [Appellant]: "has made decisions that they feel are right for their [...] business entities." Thus, this [c]ourt concludes that enforcement of the non-competition covenant is merely pure financial gain for [Appellant].

The rights of patients to seek appropriate vascular surgery services is deserving of more attention from the law than [Appellant's] expectation of profit from its commercial transaction with [Appellee].

… **[Appellant] is no longer in the vascular surgeon business, abandoning the Scranton catchment area, therefore [Appellant] has no valid [protectable] business interest**. Enforcement is not reasonably necessary to protect the current, non-[protectable] business interests of [Appellant].

(**Id.** at 15-16) (internal citations omitted; emphasis added).

We see no reason to disrupt the court's decision to deny the injunction, where Appellant failed to satisfy the "threshold" requirement to establish a legitimate business interest worthy of protection. **See Hess, supra**; **WellSpan Health, supra**; **Synthes, supra**; **West Penn Specialty MSO, Inc., supra**. We note that although Appellant's supplemental brief after argument claimed that it had hired a board certified vascular surgeon that would cover the Scranton area, in her testimony concerning that surgeon (Dr. Choudry), Ms. Kane explained that he would be working primarily out of the Wilkes-Barre General Hospital, and that if patients in Scranton and the

- 19 -

Scranton area wanted a board certified vascular surgeon affiliated with Appellant, they would have to go to Wilkes-Barre to see that physician. (**See** N.T. Hearing at 87). Appellant's assertion of patient goodwill as a protectable business interest is naught where Appellant abandoned the specialty vascular surgeon business in the area. **See WellSpan Health, supra**.

Because Appellant cannot establish that it has a protectable business interest necessary to enforce the non-competition restrictive covenant, Appellant cannot succeed on showing it had a clear right to relief to justify the grant of injunctive relief.[8] **See Warehime, supra**; **Synthes, supra**. Accordingly, we affirm the court's order denying Appellant's request for immediate injunctive relief.[9]

Order affirmed.

---

[8] Based on our disposition, we decline to reach Appellant's remaining issues, which cannot succeed in the absence of Appellant demonstrating it had a protectable business interest as a threshold matter.

[9] We reiterate that the two-year period under the non-competition restrictive covenant will expire on April 30, 2025. At that point, any challenge to the court's denial of injunctive relief will be moot. **See Davis, supra**. **See also Lico, Inc., supra**.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/18/2025